**AMERICAN FEDERATION OF RAIL-ROAD POLICE, INC. (AFRP), Plaintiff–Appellant,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), Raymond Ingalls, Robert Herman, Oscar Benjamin, Sam Nickerson, and Robert Bagosy, Defendants–Appellees.**

No. 1279, Docket 87–7233.

United States Court of Appeals, Second Circuit.

Argued June 11, 1987.

Decided Oct. 28, 1987.

Erick F. Larsen, New York City (Kranz, Davis & Hersh, on the brief), for plaintiff-appellant.

Robert A. McCullough, New York City (Joanna L. Moorhead, Mark S. Landman, Amy B. Gallent, Siff, Newman, Rosen & Parker, P.C., New York City, on the brief), for defendants-appellees.

Before VAN GRAAFEILAND, KEARSE and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff American Federation of Railroad Police ("AFRP"), the recognized collective bargaining representative of certain policemen employed by defendant National Railroad Corporation ("Amtrak"), appeals from a judgment of the United States District Court for the Southern District of New York, Richard Owen, *Judge*, dismissing for failure to state a claim and for lack of subject matter jurisdiction its complaint brought under 42 U.S.C. § 1983 (1982), alleging that Amtrak's policy of ejecting homeless persons from Pennsylvania Railroad Station ("Penn Station") in New York City violated various constitutional rights of both the homeless and the Amtrak police officers required to enforce the policy. The district court held that AFRP had no standing to assert claims on behalf of homeless persons and that the claims asserted on behalf of Amtrak policemen were either premature or were work rule disputes that, under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* (1982), were within the exclusive jurisdiction of the National Railroad Adjustment Board ("NRAB"). On appeal, AFRP contends principally that the court should not have dismissed the complaint, because Amtrak policy requires the use of force at a constitutionally impermissible level, and because the NRAB has no power to adjudicate claims of constitutional violations. For the reasons below, we affirm the judgment of the district court.

## I. BACKGROUND

In June 1985, Amtrak articulated a policy of ejecting "homeless and undesirable[ ]" persons from Penn Station. It thereafter repeatedly instructed its police officers to "eject all undesirables with whom they come in contact" and to "escort these loiterers out of Penn Station." Amtrak regarded the failure of its policemen to eject such indigents as a ground for disciplinary action.

AFRP, which represents Amtrak policemen having a rank of lieutenant or lower, including those assigned to patrol Penn Station, commenced the present action in late 1986. The complaint alleged that the Amtrak policy (1) violated the rights of homeless persons to due process, equal protection, liberty, freedom of expression and assembly, and the privileges and immunities secured by the Fourteenth Amendment to the Constitution, and (2) violated the rights of Amtrak policemen by exposing them to (a) discipline for failing to enforce the policy, the details of which the complaint alleged were vague both in defining "homeless" and "undesirable" and in describing the procedures to be followed, (b) physical and emotional injury for policemen who attempted to enforce the policy, and (c) liability for civil rights violations for attempting to enforce it. AFRP sought a declaratory judgment that Amtrak's policy was unconstitutional, an injunction against Amtrak's requiring its policemen to carry

out the policy, and $10 million in compensatory and/or punitive damages.

Amtrak promptly moved to dismiss for failure to state a claim on which relief can be granted and for lack of subject matter jurisdiction; AFRP cross-moved for a preliminary injunction. The district court granted Amtrak's motion. In an endorsed memorandum, the court ruled that AFRP's claim that its members might suffer personal injury in enforcing Amtrak's policy or disciplinary action for not enforcing it reflected a dispute over work rules and working conditions, the resolution of which lay within the exclusive jurisdiction of the NRAB, *see* 45 U.S.C. § 153 First (i). It ruled that AFRP's claim that its members risked exposure to liability for violating the civil rights of any homeless persons ejected from the station was not ripe for consideration since the exposure was conjectural or hypothetical rather than real and immediate. The court ruled that AFRP had no standing to assert the constitutional rights of homeless persons.

## II. DISCUSSION

On this appeal, AFRP argues principally that the court should not have dismissed its complaint (1) because it alleges constitutional violations that are not within the province of the NRAB, and (2) because Amtrak's policy "mandates false arrest and excessive force" by Amtrak policemen and thereby "deprives innocent persons of their constitutional and common law rights and protections." For the reasons below, we conclude that AFRP's claims of injury to Amtrak policemen fail to state any claim, other than one within the exclusive jurisdiction of the NRAB, on which relief can be granted by the federal courts, and that as to the claim that the policy violates the rights of homeless persons, AFRP lacks standing.

### A. *The Rights of the Amtrak Policemen*

AFRP alleges four types of injury to its members: (1) risk of physical injury to those who attempt to enforce Amtrak's policy of ejecting the homeless, (2) emotional injury, pain, and suffering, (3) exposure to civil liability for enforcing the policy, and (4) risk of discipline or loss of employment for failing to enforce it. The first two are insufficient to invoke the jurisdiction of the federal court; the third is premature and speculative; and the fourth, to the extent that it is not within the exclusive jurisdiction of the NRAB, is insufficient to state a claim.

### 1. *Physical Injury*

█ AFRP's claim that Amtrak's policy exposes its members to physical injury is based on the premise that the persons Amtrak policemen seek to eject from Penn Station will respond with violence. The premise is insufficient to support a claim on which relief can be granted. Violent resistance to police orders would of course be unlawful, and no basis has been presented for believing that the routine response of a homeless person to an ejectment order would be violence. The Supreme Court has ruled that a claim based on speculation that a given class of persons will engage in unlawful conduct must be dismissed. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 105–06, 103 S.Ct. 1660, 1665–67, 75 L.Ed.2d 675 (1983) (holding that plaintiff would have had standing to request injunction against police use of "chokeholds" only if complaint asserted the "incredible" hypothesis that "strangleholds are applied by the Los Angeles police to every citizen who is stopped or arrested regardless of the conduct of the person stopped," *id.* at 108, 103 S.Ct. at 1668).

█ To the extent that AFRP is seeking damages for actual past physical injuries, the complaint is insufficient for at least two reasons. First, there are no allegations of any specific act of violence. More importantly, where, as here, any injury would have been peculiar to the individual policeman, the union has no standing to seek damages on behalf of its members. *Warth v. Seldin*, 422 U.S. 490, 515–16, 95 S.Ct. 2197, 2213–14, 45 L.Ed.2d 343 (1975).

### 2. *Emotional Injury*

█ AFRP also alleges that Amtrak's policy "is unreasonably causing AFRP

member AMTRAK police employees emotional injury, pain and suffering." Such a claim is too abstract to give AFRP standing to invoke the jurisdiction of the federal court. *See Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.,* 454 U.S. 464, 482–83, 485–86, 102 S.Ct. 752, 763–66, 70 L.Ed.2d 700 (1982).

### 3. *Exposure to Civil Liability*

█ The principal impetus for this lawsuit, termed the Amtrak policemen's "greatest fear" (Declaration of AFRP President Kenneth Anderson, dated December 31, 1986 ("Anderson Declaration"), ¶ 35, submitted in support of AFRP's motion for a preliminary injunction), is the apprehension that the policemen may be exposed to liability for violating the civil rights of the persons ejected from the station. The district court properly dismissed this claim on grounds of prematurity. The complaint does not allege that any AFRP member has been sued or threatened with suit. In the circumstances, this claim is based on a series of speculations, including the hypothesis that an ejected person will bring suit; that all defenses, including that of qualified immunity, will fail; and that Amtrak would fail to honor its bylaw-undertaking to indemnify an officer for legal expenses and liability incurred as a result of his good faith compliance with Amtrak instructions. Reliance on such a series of speculative premises reveals a lack of the concreteness necessary to present a genuine case or controversy. *See O'Shea v. Littleton,* 414 U.S. 488, 497–98, 94 S.Ct. 669, 676–77, 38 L.Ed.2d 674 (1974); *Steffel v. Thompson,* 415 U.S. 452, 458–60, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974).

### 4. *Threat of Discipline or Loss of Employment*

█ The least speculative claim asserted by AFRP is that its members risk discipline if they fail to enforce Amtrak's policy. An Amtrak document submitted to the court in support of AFRP's preliminary injunction motion revealed that at least one disciplinary charge had been grounded in part on the officer's failure to implement the poli-

cy. This claim is ripe and reveals a genuine case or controversy, and AFRP has standing to assert it. *Board of Education v. Allen,* 392 U.S. 236, 241 & n. 5, 88 S.Ct. 1923, 1925 & n. 5, 20 L.Ed.2d 1060 (1968). It has other flaws, however, that made dismissal appropriate.

To begin with, we note that AFRP members have no substantive constitutional right not to be disciplined or dismissed from their jobs. *See, e.g., Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The complaint does not assert either a state-law property interest in employment, though there may well be one, or any denial by Amtrak of constitutionally required procedural protections in connection with disciplinary or dismissal proceedings.

AFRP's complaint also states that the Amtrak policy provides the policemen with no definition of the terms "homeless" and "undesirable," and no guidelines or instructions as to standards or expected procedures. The district court properly construed this as an attack on a work rule promulgated by Amtrak. Since the terms and conditions of employment for Amtrak police personnel are governed by a collective bargaining agreement, resolution of AFRP's challenge to this work rule is within the exclusive jurisdiction of the NRAB. *See* 45 U.S.C. § 153 First (i).

Finally, AFRP asserts in its brief on appeal that the Amtrak policy "mandates false arrest and excessive force," arguing in both its written and its oral presentations to this Court that Amtrak has instructed its policemen to "beat" homeless and undesirable persons. While such a policy would no doubt provide grounds for a suit by the victims of the false arrest or the excessive force, AFRP's assertions that this is in fact the nature of the policy—rather than simply AFRP's interpretation of it—lack support in the present record. The assertions that Amtrak has ordered beatings and excessive force are to an ex-

tent contradicted by AFRP's own complaint, which alleges that Amtrak has told AFRP members that Amtrak has authority to use "necessary" physical force to remove or eject homeless and undesirable persons. Moreover, though AFRP has repeatedly purported to quote Amtrak as ordering its policemen to "beat" indigents found in the station, no such instruction appears in any of the documents submitted by AFRP. When questioned at oral argument, AFRP counsel eventually conceded that his only support for the representations that Amtrak had instructed its policemen to administer beatings was a statement in one Amtrak memorandum that ejectment from Penn Station should begin during the warm weather months so that homeless and other undesirable persons would be "educated" that they could not remain in the station when the weather turned cold. The Amtrak policemen's unsubstantiated assumption that an instruction to "educate[ ]" is an instruction to use excessive force or administer a "beat[ing]" is an unacceptable basis for a federal claim.

### B. *The Rights of the Homeless*

■ The doctrine of standing in the federal courts, which has its principal roots in Article III of the Constitution, generally prohibits a plaintiff from asserting another person's legal rights. *See Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Warth v. Seldin,* 422 U.S. at 499, 95 S.Ct. at 2205. Though in appropriate circumstances this prohibition may be relaxed, prudential considerations lead us to deny a party standing to pursue the claim of a nonparty unless, *inter alia,* the plaintiff "can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." *Secretary of State v. J. H. Munson Co.,* 467 U.S. 947, 955–56, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984).

AFRP's attempt to assert the rights of the homeless does not meet this test. As noted above, the main impetus for this suit is the policemen's fear of incurring liability for violating the civil rights of those ejected from the station. Thus, AFRP's president articulated the officers' fear of "liabil-

ity for causing serious physical injury, wrongful death (arbitrary and unjustified deprivation of life) or even criminally negligent homicide." (Anderson Declaration ¶ 35.) The concern that the policemen not be held liable, however, would be allayed just as well by a ruling that the policy described by AFRP does *not* violate homeless persons' constitutional rights as by a ruling that the policy is unconstitutional. Accordingly, there is no reasonable basis for expecting AFRP to press the rights of the homeless with the necessary vigor, and we conclude that AFRP lacks standing to assert those rights.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court dismissing the complaint.