EMPIRE STATE PHARMACEUTICAL SOCIETY, INC., and BJK, Inc. d/b/a Long Beach Chemists, Plaintiffs,

v.

Cesar A. PERALES, individually and as Commissioner of the New York State Department of Social Services, Defendant.

No. 87 Civ. 5822 (MGC).

United States District Court, S.D. New York.

Nov. 6, 1987.

---

Jerome R. Halperin, P.C. by Jerome R. Halperin, Guy S. Halperin, Alice Slater, Bruce S. Klein, New York City, for plaintiffs.

Robert Abrams, Atty. Gen. of the State of N.Y. by Maryellen Weinberg, Robert J. Schack, Gerald Slotnik, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

CEDARBAUM, District Judge.

This is an action for declaratory judgment and injunctive relief pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 65, commenced for the purpose of attacking the validity and enforceability of Part 504 of Title 18 of the New York Code Rules and Regulations ("NYCRR") promulgated by the Commissioner of the New York State Department of Social Services ("the Department").

Plaintiffs' application for a preliminary injunction was amended, on consent of the parties, to request a permanent injunction. The Department has moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss plaintiffs' verified complaint. For the reasons discussed below, plaintiffs' application for permanent injunctive relief is denied, and defendant's motion to dismiss the complaint is granted.

## BACKGROUND

Plaintiff Empire State Pharmaceutical, Inc., ("Empire") is a trade association whose members are registered pharmacies and licensed pharmacists, most of whom are enrolled in New York State's Medicaid Program as "providers" of Medicaid coverage. Plaintiff BJK, Inc., ("BJK") is a member of Empire, and has been enrolled as a provider in the Medicaid Program since 1967. Empire and BJK allege that they have been deprived of their right to due process of law under the Fourteenth Amendment simply by the promulgation of 18 NYCRR Part 504, which prescribes new procedures for enrollment and continuation of providers in the Medicaid program.

Part 504 of the NYCRR became effective on January 5, 1987. The regulations set forth the procedures the Department follows in determining whether to enroll a prospective Medicaid provider in the program. § 504.2. Parties wishing to participate in the program are required to submit an application, § 504.10, and upon receipt of an application, the Department investigates the prospective provider. § 504.4. The Department can elect not to contract with a prospective provider who has been sanctioned by another governmental agency, or who has engaged in activities or conduct that creates an undue risk to the program or Medicaid recipients. § 504.5.

Part 504 also sets forth the terms and conditions for continued participation in the program. All providers enrolled prior to January 5, 1987 are required by the new regulations to re-enroll within sixty days of receiving notice from the Department to do so. If a provider fails to submit the application, that provider is automatically terminated from the program. § 504.10. After an application for enrollment or reenrollment has been accepted, enrollment can be terminated without cause by either the provider or the Department upon thirty days written notice to the other. § 504.7. Any provider terminated from the program may institute review proceedings pursuant to Article 78 of the New York Civil Practice Law and Rules.

Plaintiffs correctly point out that prior to the adoption of the new regulations, the Department regulations ensured that a provider's participation in the program would not to be terminated without cause and until the provider had been given notice and an opportunity for a hearing. § 515.

Plaintiffs argue that continued participation in the program is a property interest protected by the due process clause of the Fourteenth Amendment, and that the new regulations strip providers of their right to prior notice and a hearing. Plaintiffs also argue that the new regulations are unconstitutional on their face because they give the Department unfettered discretion to deny applications for enrollment or reenrollment.

Neither BJK nor any member of Empire has been denied reenrollment or threatened with such denial. Indeed, no member of Empire other than BJK has yet even applied for reenrollment. BJK has applied for reenrollment and has been told by counsel for the Department that there is no reason to expect denial of the application, or termination of BJK's continued participation.

Since this case does not present an actual controversy ripe for judicial intervention, I need not address the arguments going to the merits of the regulations.

## DISCUSSION

Under the Declaratory Judgment Act, a court of the United States may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Courts, however, have traditionally been reluctant to grant declaratory judgment unless the rights of the interested parties "arise in the context of a controversy 'ripe' for judicial resolution." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

In *Abbott Laboratories*, which remains the "leading case" on the ripeness doctrine, *see Pacific Gas & Electric v. Energy Resources Commission*, 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1982), the Supreme Court held that the question of ripeness turns on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." 387 U.S. at 149, 87 S.Ct. at 1515. In that case, drug manufacturers challenged a regulation requiring that labels and adver-

tisements for prescription drugs contain the "established name" of the particular drug rather than just the trade name. *Id.* at 137–39, 87 S.Ct. at 1509–10. Upon the parties' motions for summary judgment, the Court found that the challenged regulation was both fit for judicial resolution and had a direct effect on plaintiffs, forcing them either to incur the immediate cost of complying or to risk prosecution. *Id.* at 152, 87 S.Ct. at 1517. Under these circumstances, where to withhold judicial determination would place an undue hardship on the parties, the Court found declaratory relief to be appropriate. *Id.* at 148–56, 87 S.Ct. at 1515–20.

In a companion case, *Toilet Goods Assoc. v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), a group of distributors and manufacturers of cosmetics challenged a regulation requiring manufacturers to provide Food and Drug Administration employees unrestrained access to manufacturing facilities. Those who did not comply with the regulation faced possible immediate suspension of their certification. *Id.* at 158–61, 87 S.Ct. at 1521–23. The Court found that the challenge to the regulation failed the twofold ripeness inquiry in both respects. First, the Court held that the issue was not appropriate for judicial resolution because the regulation said the Commissioner *may* order inspections, or *may* suspend certification. The Court noted that "[a]t this juncture we have no idea whether or when such an inspection will be ordered and what reasons the Commissioner will give to justify his order." *Id.* at 163, 87 S.Ct. at 1524. "We believe that judicial appraisal of these factors is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge made here." *Id.* at 164, 87 S.Ct. at 1524. Second, the Court found that there was no hardship imposed on plaintiffs by withholding judicial intervention. The Court found that the primary conduct of plaintiffs was unaffected and that "no irremediable adverse consequences [would] flow from requiring a later challenge to this regulation

...." *Id.* at 164, 87 S.Ct. at 1524. As a result, a ripe controversy did not exist.

The present action more closely resembles *Toilet Goods* than it does *Abbott Laboratories.* There is no evidence that the "taking" that plaintiffs fear is an imminent or even probable event. Plaintiffs merely assert that the Department might deny their application for reenrollment, or might terminate them once they are enrolled. Since the Department has not denied any reenrollment applications nor issued any thirty day notices of termination, this is too hypothetical and speculative a threat to warrant judicial intervention. *See, American Federation of Railroad Police, Inc. v. National Railroad Passenger Corp.,* 832 F.2d 14, 17 (2d Cir.1987).

It is also evident that to withhold judicial determination at this point would place no undue hardship on plaintiffs. There are no immediate adverse consequences that will predictably result from postponing a challenge to these regulations. The regulations, on their face, do not require plaintiffs to make any change in the conduct of their business affairs.

Plaintiffs argue that the choice of either submitting to regulations they consider constitutionally invalid or risking automatic termination creates a sufficiently immediate controversy to render this case ripe for decision. They rely on *Lake Carriers Assoc. v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972), where plaintiff faced a choice of either complying with state law by installing costly anti-pollution devices which might have been incompatible with prospective preemptive federal regulations or suffering possible criminal prosecution. The Court held that where "compliance is coerced by the threat of enforcement ... the controversy is both immediate and real." *Id.* at 508, 92 S.Ct. at 1756.

In *Lake Carriers,* as in *Abbott Laboratories,* the choice was either to incur great expense by complying with newly promulgated regulations or to risk possible prosecution. It is clear that plaintiffs are not faced with such a choice in this case. On the contrary, all plaintiffs need to do is to submit an application for reenrollment within sixty days of notice from the Department, which imposes little or no cost.

## CONCLUSION

Since plaintiffs seek a present court determination of a possible future controversy, this suit is not ripe for adjudication. If and when the regulations are applied as plaintiffs fear, the court will have a concrete record on which to base an appropriately informed decision. Accordingly, plaintiffs' application for a permanent injunction is denied, and defendant's motion to dismiss the complaint is granted.

SO ORDERED.