OPINION OF THE COURT
Harold J. Hughes, J.
Petitioner brings this proceeding to annul respondent’s decision to terminate his enrollment in the Medicaid program.
Petitioner is a physician with a practice located at 703 East 187th Street, Bronx, New York, with the bulk of his patients being members of minority groups and Medicaid recipients. Medicaid (42 USC § 1396 et seq.) provides medical assistance to the poor. It is financed by Federal and State funds, and administered by the States. In New York, health care providers such as physicians, pharmacies, and laboratories, enroll with the Department of Social Services as providers and receive reimbursement for services rendered to those eligible for Medicaid assistance. Petitioner has been enrolled in the Medicaid program as a provider since 1979.
*65 Effective January 5, 1987, the Department of Social Services promulgated 18 NYCRR part 504, new regulations governing the enrollment of providers in the Medicaid program. Prior "to the adoption of the new regulations, the Department regulations ensured that a provider’s participation in the program would not * * * be terminated without cause and until the provider had been given notice and an opportunity for a hearing” (Empire State Pharm. Socy. v Perales, 672 F Supp 146, 147 [SD NY]). Part 504 dramatically altered the right to notice and a hearing by requiring every previously enrolled provider to make a new application, with the Department having broad discretion to reject such application. As originally promulgated, part 504 made no provision for any administrative hearing or appeal from the denial of an application. Subsequently, subdivision (e) was added to section 504.5 which provides:
"(1) If an application is denied, the applicant may appeal the denial by filing a written request for reconsideration with the department within 60 days of the date of the notice of denial. A timely request stays any action to terminate a provider currently participating in the medical assistance program pending the decision on reconsideration.
"(2) The request for reconsideration must include all information which the applicant wishes to be considered in the reconsideration, including any documentation or arguments which would controvert the reason for the denial or disclose that the denial was based upon a mistake of fact.
"(3) The department will review its determination to deny enrollment and issue a written determination after reconsideration within 60 days of receipt of the request. The determination after reconsideration may affirm, revoke, or modify the denial and will be the final decision of the department”.
18 NYCRR part 515 governs the Department’s authority to impose sanctions against Medicaid providers for engaging in practices unacceptable under, or abusive to, Medicaid. Part 515 provides for detailed notice to the provider of the alleged wrongdoing. On March 25, 1988, the Department served Dr. Okoli with specific charges pursuant to 18 NYCRR 515.6. Because of the detail of the charges, he knew exactly what he was accused of, and was able to retain a board-certified internist as an independent medical expert to review the charts in question. The internist rendered an opinion that petitioner’s treatments and methods were consistent with good *66 medical practice. Not content to pursue Dr. Okoli’s removal under part 515, the Department, by a letter dated April 19, 1980, notified petitioner that he was being terminated from the Medicaid program under part 504 because, after a peer review of 10 of his patients’ charts:
"[it] was determined that there are multiple deficiencies including:
"1. The charts are grossly illegible which is a violation of 18 NYCRR 540.7 [a] [10].
"2. There are excessive numbers of visits for each patient.”
The letter went on to advise Dr. Okoli of his right to request a reconsideration and to submit written arguments and documentation concerning any mistake of fact with that request. Dr. Okoli retained counsel who by letter dated April 15, 1988, requested that the Department not simultaneously pursue two administrative proceedings against Dr. Okoli, and in the event that the Department went forward with the part 504 termination, petitioner’s counsel demanded an itemized specification of the charges and deficiencies. By letter dated May 6, 1988, the Department responded that: "Please be advised that it is the judgment of the Department of Social Services that Mr. Pogoda’s letter is sufficiently specific to enable Dr. Okoli to understand the nature of the Department’s findings and to prepare a detailed response. No further clarification is required”.
By letter dated May 16, 1988, petitioner’s counsel advised the Department that Dr. Okoli was unable to present a coherent appeal because: "(1) We have been refused disclosure of what part of the records have been determined to be grossly illegible, (2) we have been refused details as to what visits were excessive and the reason for them being determined to be excessive and, (3) we have been refused details of other 'multiple deficiencies’ alleged in the Department’s April 19, 1988 letter”.
On July 29, 1988, the Department sent its final determination stating in pertinent part that: "I regret to advise you that the determination after reconsideration is to affirm the denial. The request for reconsideration was not sufficient to controvert the reason for the denial, nor did it disclose sufficient basis that the denial was based upon mistake of fact to warrant a change in our decision as outlined in the April 16, 1988, letter from Ralph Pogoda to Dr. Okoli”.
This CPLR article 78 proceeding ensued. Petitioner’s pri *67 mary contention is that he has been denied due process of law, in that he was not given adequate notice of the charges against him and was denied an evidentiary hearing to clear his reputation. Petitioner alleges that respondent must report petitioner’s termination from the Medicaid program to the Federal Government, which termination, in turn, will disqualify him from Medicaid and Medicare programs on a nationwide basis. Petitioner further asserts that "almost all states on license applications, hospitals on staff privilege applications, original and renewal, as well as insurance carriers, third party payors, medical groups, HMOs, etc. * * * inquire as to whether or not a physician has been terminated or suspended from programs such as Medicaid”. Petitioner contends that such applications are rejected because of a Medicaid termination. In essence, petitioner claims the respondent’s conduct has besmirched his professional reputation and will cause his financial ruin. Respondent’s position is that a provider has no property interest in continued participation in the Medicaid program giving rise to due process protection, and, even if a provider were entitled to such protection, petitioner received all the due process that is constitutionally required.
The time has come to hold that a physician denied participation in the New York State Medicaid program on an allegation of incompetent or fraudulent conduct has the right to due process of law including written detailed charges and an evidentiary hearing. Petitioner’s entitlement to due process arises from two sources. The first source is a property interest in continued participation in Medicaid. Medicaid and government regulation of the practice of medicine have grown to such a degree that expulsion of a physician from the program is tantamount to professional ruin. This court is well aware that as recently as 1980 the Court of Appeals, in Schaubman v Blum (49 NY2d 375, 380), held that "a provider of Medicaid services has no vested right to continued participation in the program; rather, such participation is a privilege which may, in proper circumstances, be revoked”. Moreover, the decision of Mr. Justice Williams in Matter of R.Q. Drugs v Perales (Spec Term, Albany County, July 29, 1988), which holds that 18 NYCRR part 504 meets the constitutional due process standard, has been noted. Nonetheless, the issue should be reconsidered. At one time the opportunity to obtain a driver’s license was considered a privilege. However, the courts eventually recognized the importance of the automobile in modern *68 society and determined that a driver had a vested property right subject to due process protection in a driver’s license (Matter of English v Tofany, 32 AD2d 878; People v Velasquez, 22 Misc 2d 90; 7 NY Jur 2d, Automobiles and Other Vehicles, § 106, at 309, 310). The same recognition should occur regarding a physician’s ability to participate in the Medicaid program. Our courts presently recognize a constitutional right to continue to receive pable television service worthy of due process protection (Small v Manhattan Cable Tel., 122 Misc 2d 820), while not affording the same status to a physician’s ability to take part in a government program essential to a solvent medical practice. This unjust value judgment should be corrected, and physicians given due process protection from unfettered bureaucratic discretion by determining that the opportunity for continued participation in the Medicaid program is a constitutionally protected property right (Patchogue Nursing Center v Bowen, 797 F2d 1137, 1145 [2d Cir]).
The second basis for affording due process protection is that a physician accused by a government agency of unethical, incompetent, or fraudulent practices should have an opportunity for a name-clearing hearing. The United States Supreme Court, in interpreting the Due Process Clause, has stated that " '[wjhere a person’s good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential’ ” (Board of Regents v Roth, 408 US 564, 573). Until now, the right to a name-clearing hearing has been extended to public employees discharged without charges and without a hearing under the cloud of a stigmatizing public statement of government claims* (Matter of Lentlie v Egan, 94 AD2d 839, affd 61 NY2d 874). A physician terminated from the Medicaid program upon a charge of unprofessional conduct should be given similar protection (Doe v Bowen, 682 F Supp 637 [Mass]). The common law has long recognized that a professional’s stock-in-trade is his or her good name, and to make an accusation against a physician of fraudulent or unprofessional conduct is libelous per se (Bornmann v Star Co., 174 NY 212). Here, anonymous bureaucrats clothed with the protection of governmental service have accused Dr. Okoli of rendering unneces *69 sary services to his patients in order to overcharge Medicaid. The doctor’s professional reputation has been impugned. Due process requires that he have an opportunity to clear his name.
The next issue is whether the procedure employed by the respondent gave petitioner adequate due process of law. The notice sent to petitioner states that "[b]ased on the review of the ten (10) recipient charts it was determined that there are multiple deficiencies including” the specific charges of illegible charts and excessive numbers of visits per patient. The notice is defective. "Due process requires that a person be fully informed of the nature of the charges so as to permit the person to adequately prepare and present a defense” (Matter of Multari v Town of Stony Point, 99 AD2d 838, 839). The notice given by respondent accuses petitioner of unspecified "multiple deficiencies” while setting forth as examples, without limitation, two general charges of wrongdoing. An accused cannot be expected to prepare a reasonable defense against a charge of general "multiple deficiencies”. Such omnibus phraseology would be stricken from a bill of particulars (Schlenker v School Dist. No. 15, 198 Misc 775).
The remaining question is whether respondent’s procedure of permitting a discontinued provider to mail in a written submission as to why participation should be permitted constitutes an adequate hearing. It does not. A major defect is that respondent’s procedure places the burden of proof upon petitioner. The New York rule is that the burden is upon the party asserting the affirmative of an issue (Matter of Grossman v Rankin, 43 NY2d 493, 502). In this case, the status quo had been that Dr. Okoli was a competent physician, as the State so recognized by licensing him, and, as such, was permitted for more than nine years to participate in the Medicaid program. The respondent then made the accusation that Dr. Okoli was unfit and should be terminated. Having made the accusation, respondent, at the administrative level, should have the burden of proving it. The meeting of that burden should entail permitting the physician to confront and cross-examine the accusing witnesses (Matter of Simpson v Wolansky, 38 NY2d 391, 395). Petitioner was deprived of that opportunity.
Finally, constitutional issues aside, this court agrees with the holding of Mr. Justice Baer in Matter of Trahan v Perales (Sup Ct, NY County, Sept. 2, 1988) that respondent engaged in arbitrary and capricious administration action by resorting to *70 18 NYCRR part 504, rather than part 515, in attempting to remove a participating provider from the Medicaid program.
The petition will be granted, without costs, to the extent of annulling the respondent’s determination to terminate petitioner’s participation in the Medicaid program, and directing that he be reinstated forthwith as an enrolled provider of medical services until such time as he is removed by a procedure complying with the Due Process Clause.

 Respondent’s accusations against petitioner may become known within the health care industry through reporting to the Federal Government (42 USC § 1396r-2). In any event, his patients will learn when he can no longer treat them, and there can be no doubt that the doctor’s future employment opportunities will be affected.