Maeshall E. Livingston, J.
This is a motion by defendant (Star) for summary judgment dismissing the complaint on -the merits upon the grounds that there are nó triable issues of fact, or in the alternative, summary judgment in favor of Star against the plaintiffs (Jaylynn) on the counterclaim.
The pleadings in the action, the motion papers, a copy of the lease which is the basis of this controversy, and a transcript of an examination before trial of one of the plaintiffs were submitted.
On January 17, 1967 Jaylynn, as lessors, entered into a lease agreement with Star, as lessee, for premises to be constructed by Jaylynn. and to be used by Star as a retail supermarket for a term of 15 years. Thereafter Star entered into possession, and on December 8,1969 a fire occurred causing extensive damage to the building which was located at 4455 Lake Road in Broekport, New York.
Jaylynn commenced this action against Star, alleging that the firé was due to Star’s negligence and sought damages. In its answer, Star, for an affirmative defense, invoked clause 20 of. /the lease, which provides in part as follows: “ Lessor shall carry adequate fire insurance and broad form extended coverage protecting the demised premises and the buildings of which the demised premises are a part * * * In no event ¡shall lessee, *543 its agents, employees or invitees be liable for damages of any nature whatsoever resulting from fire or casualty, regardless of cause or origin, and lessor shall cause its insurers to waive their subrogation rights against lessee, its agents, employees or invitees ”.
In addition, Star, by way of a counterclaim, alleged, in substance, that the lease was entered into on January 17,1967; that it contained clause 20 thereof; that the action was commenced by Jaylynn’s insurers, as a subrogated claim brought in the name of Jaylynn. These allegations were not denied, and pursuant to subdivision (a) of CPLR 3018, are deemed admitted. The fact that this is a subrogation action was also conceded by Mr. Farash, one of the plaintiffs, at an examination before trial held August 31,1971.
One of the legal principles for determination here is that a contract, lease or agreement will not be construed to exempt a party from his negligent acts, unless the intent of the exculpatory language in the agreement is expressed with clear, unequivocal words (Galante v. Hathaway Bakeries, 9 Misc 2d 19, affd. 6 A D 2d 142; Hertzog v. Harrison Is. Shores, 21 A D 2d 859; Ciofalo v. Vic Tanney Gyms, 10 N Y 2d 294).
Another matter relates to the effect of clause 20 in the lease with respect to the fire insurance company, which brings this action as the subrogee of Jaylynn. In that situation the rule is that the insurance company, which paid Jaylynn its loss, stands in place of it and has no greater rights (see 31 N. Y. Jur., Insurance, § 1621 and eases cited therein; also, 57 N. Y. Jur., Subrogation, § 26). The subrogee inherits both the strength and infirmity of Jaylynn’s position.
Star contends that clause 20 clearly and unequivocally exempts it from liability to Jaylynn or its carrier. It further- contends that in any event, Jaylynn having specifically agreed to “ cause its insurers to waive their subrogation rights against lessee, its agents, employees or invitees ”, the subrogated carrier may not take advantage of Jaylynn’s breach of the lease and claim it is not binding on it. .
Jaylynn, on the other hand (actually its insurance company, as the real party in interest), asserts the language of clause 20 is not clear and explicit in exculpating Star from the acts of its alleged negligence. In addition, it is claimed that the doctrine against exculpatory clauses is so strong that the entire clause. 20 is against public policy, and therefore, the waiver of subrogation which Jaylynn agreed to procure from its carrier is of no help because it is an attempt by Star to obtain immunity in another fashion.
*544 In my judgment the complaint must he dismissed.
The claim that clause 20 is against public policy is tenuous. If the exculpatory clause 20 between Jaylynn and Star is clear and unequivocal, then it may be enforced as between the subrogee insurance company and Star. No question of public policy exists. A clear example of this principle existed in Ciofalo v. Vic Tanney Gyms (10 N Y 2d 294, supra). There plaintiff was a patron of defendant’s gym and claimed she was injured by its negligence. In the membership contract plaintiff agreed to assume responsibility for any injuries she sustained on the premises,' including any claims for personal injury resulting from or arising out of the negligence of the defendant gym. The appeal was primarily, directed to the argument that the exculpatory release was contrary to public policy. The court held that the language was clear and unequivocal and went on to say (pp. 296-297):
“ Whether or not such provisions, when properly expressed, will be given effect depends upon the legal relationship between the contracting parties and the interest of the public therein. Thus such a provision has been held void when contained in the contract of carriage of a common carrier (Conklin v. Canadian-Colonial Airways, 266 N. Y. 244) unless a reduced fare was charged (Anderson v. Erie R. R. Co., 223 N. Y. 277); or in the contract of a public utility under a- duty to furnish telephone service (Emery v. Rochester Tel. Corp., 156 Misc. 562, affd. 246 App. Div. 787); or when imposed by the employer as a condition of employment (Johnston v. Fargo, 184 N. Y. 379).
“ On the other hand, where the intention of the parties is expressed in sufficiently clear and unequivocal language (Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36, 41), and it does not come within any of the aforesaid categories where the public interest is directly involved, a provision absolving a party from his own negligent acts will be given effect. This was the situation in Kirshenbaum v. General Outdoor Adv. Co. (258 N. Y. 489), a landlord and tenant relationship; in Graves v. Davis (235 N. Y. 315), involving a contract for towage by the owners of a tug; and in the so-called contractor cases (Turner Const. Co. v. Rockwood Sprinkler Co., 249 App. Div. 508, affd. 275 N. Y. 635; Long Is. R. R. Co. v. American Bridge Co., 175 App. Div. 170, affd. 225 N. Y. 692). In situations such as these, ‘ public policy does not condemn the immunity clause voluntarily agreed upon by these parties ’ (Kirshenbaum v. General Outdoor Adv. Co., supra, p. 495).”
There remains the language of clause 20 which Jaylynn argues is not clear and unequivocal because, as in Ciofalo v. Vic Tanney *545 Gyms (10 N Y 2d 294, supra), it did not specifically exempt acts of Star arising out of its own negligence.
However, in my judgment the language used is not so broad and general that it runs afoul of the general rule as set forth in Galante v. Hathaway Bakeries (9 Misc 2d 19, supra); Hertzog v. Harrison Is. Shores (21 A D 2d 859, supra); and Ciofalo v. Vic Tanney Gyms (supra).
The amendment to the lease, dated subsequent to the fire, has no bearing here, and I do not, therefore, presume to speculate what the parties had in mind at that time.
The exculpatory clause 20 does not specifically mention negligence of the lessee. However, the last portion thereof, which states “ lessor shall cause its insurers to waive their subrogation rights against lessee ” is a clear expression of intention to exculpate Star in my opinion.
The last-quoted portion of the agreement between Jaylynn and Star amounts practically to an agreement to indemnify Star by Jaylynn. It is almost as though Jaylynn had agreed, if the exculpatory clause was deemed to be unclear and equivocal, then Jaylynn would guarantee that its carrier would waive its subrogation rights, if, by chance, such existed against Star. • The point, as I see it, is that in paying Jaylynn, the carrier, as subrogee, stands in no better position than did Jaylynn, which guaranteed Star no claim would be made against it by its ’carrier and subrogee (cf. 46 C. J. S., Insurance, § 1211).