[617 NYS2d 338]

MICHELLE TEICHMAN, an Infant, by Her Mother and Natural Guardian, CAMILLE TEICHMAN, et al., Appellants, v COMMUNITY HOSPITAL OF WESTERN SUFFOLK et al., Defendants, and METROPOLITAN LIFE INSURANCE COMPANY, Intervenor-Respondent.

Second Department, October 11, 1994

*Pegalis & Wachsman, P. C.,* Great Neck *(Steven E. Pegalis* of counsel), for appellants.

*David J. Larkin, Jr.,* and *Peter J. Flanagan,* New York City, for intervenor-respondent.

## OPINION OF THE COURT

SANTUCCI, J.

On this appeal, we are asked to decide the novel question of whether or not an insurance carrier which has paid out medical benefits on behalf of an insured's infant child may seek reimbursement for those benefits from the proceeds of an infant's compromise, where the compromise does not indicate that it includes compensation for medical expenses and where the carrier has not timely intervened in the underlying medical malpractice action. On the facts of this case, we find that the carrier cannot recover the cost of these benefits from the infant's compromise.

This is a medical malpractice action based on the events and circumstances surrounding the birth of the infant plaintiff, Michelle Teichman, on March 20, 1986. She suffered severe central nervous system damage as a result of perinatal complications. Medical expenses incurred as a result of the infant's condition were paid by Metropolitan Life Insurance

Company (hereinafter Met Life) pursuant to the health insurance coverage policy (hereinafter the Empire Plan) provided by the employer of the infant's mother, the plaintiff Camille Teichman.

In 1987 the infant plaintiff, by her mother, Camille Teichman, and Camille Teichman, individually, commenced the instant action against the doctor and hospital involved in the birth. The case was placed on the Trial Calendar by the filing of a note of issue on or about May 17, 1990. Subsequent to the filing of the note of issue, the case appeared on the Trial Calendar and settlement negotiations ensued.

In 1991 a compromise of the case was proposed whereby the defendants would pay $4,500,000 to settle the entire case, and the mother's claim would be withdrawn. Met Life was not a party to the action and was not a party to the settlement negotiations. Prior to the point of the proposed settlement, Met Life's only "participation" in the lawsuit was its release of the infant plaintiff's medical records, and a letter sent to Camille Teichman in which Met Life indicated that it maintained a lien of over $100,000, and which requested that the plaintiff Camille Teichman execute a document known as a "Third Party Reimbursement Agreement". There is no indication in the record that Camille Teichman either responded to the letter or signed the Third Party Reimbursement Agreement.

On November 22, 1991, the settlement was placed on the record in open court. At that time the plaintiffs' counsel stated: "There is a claimed lien for Metropolitan Life of over $100,000. However * * * there appears to be no legal basis for that".

The plaintiffs' counsel also indicated that he anticipated that Met Life would withdraw its claim, as it had done so in a similar case. The attorney for the hospital stated that the settlement was inclusive of all "interest, costs, liens and disbursements".

On November 25, 1991, the plaintiffs' counsel wrote to Met Life, advising it that the case was being settled, and if it wished to assert any rights, it should do so within 10 days. On November 26, 1991, Met Life wrote to the plaintiffs' counsel, stating that it maintained a lien for medical expenses paid on behalf of the infant and that under the Empire Plan, "coverage is not provided for expenses for which payment or reimbursement is received * * * as a result of a legal action or

settlement". On December 3, 1991, the plaintiffs' counsel responded that Met Life had neither a lien nor a right of subrogation either by operation of law or under the contract.

On December 16, 1991, the plaintiffs moved to vacate all claims of Met Life and for a declaration that Met Life was without any right to the settlement proceeds. Met Life cross-moved for permission to intervene in the action, and for a declaration that it was entitled to past medical expenses which it had paid on the infant's behalf, plus all medical expenses which the child would incur in the future.

The Supreme Court granted Met Life's motion to intervene, and declared that Met Life was entitled to be reimbursed for all past and future medical expenses. The plaintiffs moved to reargue. The court granted reargument, but adhered to its original determination. We now reverse.

The Supreme Court correctly determined that CPLR 4545 was not applicable to the situation at bar, since the case was settled and not tried. CPLR 4545 (a), known as the collateral source rule, provides in pertinent part: "In any action for medical * * * malpractice where the plaintiff seeks to recover for the cost of medical care * * * evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified * * * from any collateral source such as insurance * * * [In addition, i]f the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified * * * it shall reduce the amount of the award by such finding."

The utilization of the phrases "evidence shall be admissible" and "the amount of the award", as well as the corresponding non-use of the terms "settlement" or "compromise", makes it apparent that the Legislature intended the statute to define an evidentiary rule which is to be applied only where the matter is tried and a judgment in favor of a plaintiff has been "awarded". Indeed, the collateral source rule is contained under CPLR article 45—the article governing rules of evidence—and is entitled "Admissibility of collateral source of payment". Moreover, nowhere in the rules governing the compromise of an infant's claim is there any indication that such a settlement must be reduced by any collateral source payment (see, CPLR 1206, 1207, 1208). It stands to reason that, in the context of an infant's compromise, the issue of whether or not an infant has received collateral source payments may

be taken into consideration by the parties during the negotiation process which precedes the settlement offer, without the necessity of resorting to a rule of evidence.

However, although CPLR 4545 may not be invoked to reduce the amount of the infant's compromise, there remains the question of whether or not Met Life may assert any claim to the settlement under either a right of lien or subrogation. Insofar as is relevant to our discussion herein the Empire Plan states as follows: "If [Met Life] pays benefits under This Plan for Covered Medical Expenses incurred on your account, and it is found that [Met Life] paid more benefits than should have been paid because * * * You were repaid for all or some of those expenses by another source, [Met Life] will have *the right to a refund* from You" (emphasis added).[1]

Met Life argues that this language creates a lien in its favor for the recovery of the amount it paid on behalf of the infant's medical expenses. In addition, Met Life contends that the lien cannot be extinguished because the settlement, in which Met Life did not participate, does not recite any liens or because the settlement was structured so that only the infant (and not her mother) would receive payment.

The plaintiffs argue that the Empire Plan does not create a lien on Met Life's behalf nor is there any language contained therein which would create a right of subrogation in favor of Met Life. Moreover, the plaintiffs contend that the negotiations leading up to the compromise took into account the fact that past medical expenses had been paid, and thus the settlement proceeds represented only payment for the child's pain and suffering.

The Supreme Court concluded that the language of the Empire Plan creates a lien in Met Life's behalf for the refund of the medical expenses it paid and further that the Plan's "provisions are clear that the right of subrogation extends to medical expenses incurred on the child's behalf". However, although the Empire Plan does speak to Met Life's right to a "refund", there is nothing in the Empire Plan which either expressly creates a lien in favor of Met Life or contractually declares Met Life's subrogation rights to recover from a tort-

---

1. Under the language of the Empire Plan, the use of the term "You" encompasses the infant plaintiff as an "eligible Dependent member" of the named beneficiary, Camille Teichman. Thus, Met Life was not limited to seeking reimbursement only from the plaintiff Camille Teichman. This argument was not raised on appeal by the appellants.

feasor any moneys it expended on behalf of an injured insured. "In the absence of * * * clarification, ambiguities in [a] policy [of insurance] must be interpreted in favor of the insured" *(Scinta v Kazmierczak,* 59 AD2d 313, 316). Therefore, we conclude that the Empire Plan did not provide for the creation of a lien in Met Life's favor with respect to the recovery from a tortfeasor for medical expenses paid to the insured by Met Life.

There is, however, authority for the proposition that the principle of subrogation is equitable in nature and that it is not dependent upon any of the terms of the contract *(see, Kozlowski v Briggs Leasing Corp.,* 96 Misc 2d 337, 341; *Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.,* 240 NY 37, 47).* Indeed, the usual rule is that an insurer, having indemnified its insured, "inherits" the insured's cause of action against the tortfeasor *(see, Jaylynn, Inc. v Star Supermarkets,* 75 Misc 2d 542). As stated by the court in the case of *Kozlowski v Briggs Leasing Corp. (supra,* at 342): "The doctrine of subrogation was formulated by equity to prevent unjust enrichment *(King v Pelkofski,* 20 NY2d 326, 334; *3105 Grand Corp. v City of New York,* 288 NY 178, 182). 'Subrogation is the principle which exists to prevent double recovery by the insured and to force the wrongdoer to bear the ultimate costs.' *(Scinta v Kazmierczak,* 59 AD2d 313, 316.) 'Subrogation has the dual objective of (1) preventing the insured from recovering twice for the one harm, as would be the case if he could recover from both the insurer and from a third person * * * and (2) reimbursing the surety for the payment which it has made.' (16 Couch, Insurance [2d ed], § 61:18, p 248.)"

In light of the foregoing, and considering the fact that the Empire Plan did accord Met Life the right of "refund", we conclude that Met Life did have the right to seek to be reimbursed from the settlement proceeds for any medical expenses it paid on behalf of the infant.

Nevertheless, whether this right should be enforced is dependent upon a further critical conclusion, i.e., a finding that the infant's compromise included payment for the child's past and/or future medical expenses. If, as Met Life argues, and as the Supreme Court essentially held,[2] the compromise included

2. With respect to whether or not the compromise included compensation for the infant's medical expenses, the Supreme Court only stated that "the settlement amount herein is inextricably intertwined with components

payment for the infant's past and future medical expenses, then Met Life would have the right to be reimbursed from the settlement (or a "right of subrogation") for whatever it expended on the infant's behalf for those same expenses. Such a result would prevent the plaintiffs' double recovery. On the other hand, if, as the plaintiffs contend, none of the proceeds represented payment for medical expenses (which the plaintiffs could not recover if the case had gone to judgment), then clearly Met Life would have no right to obtain a refund from the infant's pain and suffering proceeds.

Thus the ultimate question is whether or not Met Life has demonstrated that the settlement included payment for medical expenses. On the record before us, we conclude that Met Life has not so demonstrated, since it failed to timely assert its rights to its contractual refund (or right of subrogation) and thus raise the issue as to whether or not the compromise included payment for past and/or future medical expenses.

At least as early as 1989 Met Life was aware of the infant's pending lawsuit, when it received and complied with the plaintiffs' attorney's request for all medical records regarding the infant. Moreover, in June 1991 (five months before the settlement was placed on the record), Met Life wrote to the plaintiff Camille Teichman (the infant's mother), stating that it had not yet received her signed copy of its "Third Party Reimbursement Agreement" which it originally mailed to her two months earlier in April 1991. Mrs. Teichman did not respond to either of these requests. However, despite its awareness of the lawsuit, and despite Mrs. Teichman's obvious refusal to sign the reimbursement agreement, Met Life did not intervene in the lawsuit or attempt to discover the elements which comprised the proceeds of the compromise. More significantly, at no time did Met Life ever file a notice of lien or otherwise assert any rights it may have had to any portion of the infant's compromise (cf., Pang v Maimonides Med. Ctr.-Maimonides Hosp., 105 AD2d 775). Indeed, even after being advised by the plaintiffs' attorney in a letter dated November 25, 1991 that the case was being settled, and even after the attorney stated in a letter dated December 3, 1991 that Met Life had no lien or right of subrogation, Met Life still did not file a notice of lien nor move to intervene to protect its rights.

of pain and suffering and medical expenses". However, it did not delineate how much of the settlement was specifically earmarked for medical expenses.

In fact, Met Life only intervened, by way of cross motion, in response to the plaintiffs' motion in December 1991 to vacate any claims Met Life may have had against the proceeds of the settlement.

Since it was aware that the case was pending and that a settlement was imminent, at the very least Met Life should have intervened earlier, in order to discover the components of the compromise, and to determine whether or not it had the right to assert its claim for reimbursement. Had Met Life done so, it might have been in a position to challenge the plaintiffs' declaration at the settlement hearing that there was no legal basis for Met Life's claim to any of the settlement proceeds. Having failed to intervene, Met Life was unable to demonstrate that the settlement proceeds included payment for medical expenses, and it is precluded from doing so now (see, Silinsky v State-Wide Ins. Co., 30 AD2d 1).

Moreover, since Met Life's "right of refund" would only be to the extent of the settlement proceeds which were specifically allocated to payment for past medical expenses, it could only recover that specific amount—which may be less than what it actually paid in medical benefits. Neither the record nor the court's decision indicates how much, if any, of the settlement was for past medical expenses, and thus there is no way of knowing what this figure might be, and thus no way of determining how much of a "refund" Met Life could obtain.

As was stated by this Court in the case of Silinsky v State-Wide Ins. Co. (supra, at 5-6):

"Under the circumstances existing it was incumbent upon the defendant to establish payment by the tort-feasors for all damages sustained * * * It failed to produce any evidence that the tort-feasors paid full damages * * *

"The defendant never requested an order for disclosure and apparently took no other steps to discover the truth and thus it is too late for the defendant to inquire into the settlement question. We are of the opinion that under these circumstances, where the defendant failed to show a genuine issue of fact, what was paid for in settlement is a question of law and we hold that the settlement did not include medical expenses".

Similarly, in the case at bar, Met Life did not take steps to ascertain whether or not the settlement included payment for past and/or future medical expenses, and thus there is no proof that those expenses were included in the settlement.

Moreover, to permit Met Life to pursue its right of refund, despite having failed to timely assert this right, would be tantamount to having the plaintiffs act as a collection agency for the insurer during their lawsuit against the tortfeasors. In this regard, we agree with the reasoning expressed in the case of *Faust v Luke* (80 Misc 2d 953, 955):

"It is not disputed in the instant case that a carrier making medical payments under such a policy is entitled to be subrogated to the extent of its payment. This, however, gives to plaintiff husband's carrier merely a right to be pursued, either against the tort-feasor, such as exists in property damage subrogation cases, or, if plaintiff sued and collected for medical payments, in a suit against the plaintiffs. However, in any suit against the plaintiffs, *the subrogee would necessarily be compelled to prove that medical payments were recovered from the tort-feasor (Silinsky v State-Wide Ins. Co.,* 30 AD2d 1). * * *

"*It is manifestly unjust to require the recipient of medical payments, who pays a premium for such coverage, and who is called upon to grant a right of subrogation to the payor, to then, through his or her lawyer, act as a collection agency for the paying carrier in a suit against the tort-feasor.* Neither the recipient nor the lawyer has been retained to act in this capacity. Nor can the carrier who made the medical payments sit back and become enriched by the fruits of their efforts and endeavors, particularly, when, as here, none of plaintiffs' causes of action related to medical expenses" (emphasis added).

Accordingly, we conclude that since there is no proof that the infant's compromise included compensation for medical expenses, Met Life cannot be reimbursed for any such expenses it paid or will pay on the infant's behalf.

O'BRIEN, J. P., ALTMAN and KRAUSMAN, JJ., concur.

Ordered that the appeal from the order dated August 21, 1992 is dismissed, as that order was superseded by the order dated February 8, 1993, made upon reargument; and it is further,

Ordered that the order dated February 8, 1993 is reversed, insofar as appealed from, on the law, so much of the order dated August 21, 1992 as denied the appellants' motion to vacate the intervenor's claims, and for a declaration that the intervenor is not entitled to any settlement proceeds in the action, and granted that branch of the cross motion of the

intervenor which is for a declaration that it is entitled to the sum of $169,302.27 in reimbursements, plus all future amounts to be paid by it for medical expenses incurred as a result of the alleged malpractice involved in this action, is vacated, the appellants' motion is granted, and that branch of the cross motion which is for a declaration that the intervenor is entitled to the sum of $169,302.27 in reimbursements, plus all future amounts to be paid by it for medical expenses incurred as a result of the alleged malpractice involved in this action, is denied; and it is further,

Ordered that the appellants are awarded one bill of costs; and it is further,

Ordered that the matter is remitted to the Supreme Court, Suffolk County, for entry of a judgment declaring that the intervenor is not entitled to any settlement proceeds in the action.