U.S. HEALTHCARE, INC. (NEW YORK), Plaintiff,

v.

Kathleen O'BRIEN and Kevin O'Brien, individually and as parents and natural guardians of Michael O'Brien, Howard S. Richman, Goldsmith, Tabak & Richman, P.C., Staten Island University Hospital, Lee Robbins, M.D., Aziz Hassan, as executor of the estate of Lubaida Hassan, M.D., and Gloramelia Dano, M.D., Defendants.

No. 92 Civ. 7647 (MGC).

United States District Court, S.D. New York.

Nov. 30, 1994.

Meyer, Suozzi, English & Klein, P.C., Mineola, NY by Charles D. Cole, Jr. and Jeffrey G. Stark, for plaintiff.

Goldsmith & Richman, P.C., New York City by Susan Scharf and Howard S. Richman, for defendants Kathleen and Kevin O'Brien and Goldsmith, Tabak & Richman, P.C.

Ellenberg & Hutson, New York City by James H. Irish and Michael A. Ellenberg, for defendant Staten Island University Hosp.

Sedgwick, Detert, Moran & Arnold, New York City by Stephen D. Chawkin, Jr., for defendant Gloramelia Dano, M.D.

## OPINION

CEDARBAUM, District Judge.

This action arises from a dispute over the interpretation of a right of recovery clause in a health benefits plan issued by plaintiff U.S.

Healthcare, Inc. of New York ("USH"). The plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* USH seeks a declaratory judgment that it is entitled to recover from the proceeds of a pending state medical malpractice action more than $1 million in benefits that it paid for the care of Michael O'Brien, on whose behalf the malpractice action was brought. USH sues Kathleen and Kevin O'Brien, the parents of Michael O'Brien, and Goldsmith, Tabak & Richman, P.C.,[1] the law firm representing the O'Briens in the state court action. USH also sues two defendants in the state malpractice action, Staten Island University Hospital ("SIUH") and Dr. Gloramelia Dano. This action has been settled and discontinued as against defendants Aziz S. Hasan,[2] Dr. Lee Robbins, and Howard S. Richman. *See* Orders of Jan. 24, 1994; Feb. 4, 1994, and May 16, 1994.

USH moves for summary judgment against the O'Briens for "$536,528.89, which is the amount of the state-court, medical malpractice settlement ($725,000) less attorney's fees and expenses ($186,822.11) and the Medicaid lien ($1,649)." (USH Notice of Motion.) In addition, USH seeks a declaratory judgment that USH may enforce its right of recovery against any further settlements or judgments in the state court action, and that the O'Briens must pursue a claim to recover benefits paid by USH. (*Id.*) In its reply papers, USH acknowledges that it cannot force the O'Briens to pursue a claim to recover the benefits, but states that the O'Briens should pursue such a claim because USH is entitled to enforce its right of recovery against any settlement or judgment in the state court action. (USH Reply Mem. at 27.) The defendants each move for summary judgment and contend that USH is not entitled to any of the proceeds of the malpractice action.

For the reasons discussed below, USH's motion for summary judgment is denied, and the motions for summary judgment of Kathleen and Kevin O'Brien, Goldsmith, Tabak &

Richman, P.C., SIUH, and Dr. Dano are granted in part and denied in part.

### The Facts

The following facts are undisputed. From 1987 through 1988, USH provided medical benefits to Kevin O'Brien and his family pursuant to a Group Master Contract between his employer, Scott Environmental Technology, and USH. (USH 3(g) Stmt. Ex. A.) On January 1, 1989, after leaving his job at Scott Environmental Technology, Mr. O'Brien arranged to continue receiving medical benefits from USH by entering into an Individual Conversion Contract. (*Id.* Ex. B.)

On April 4, 1987, Mr. O'Brien's son, Michael, was taken to the emergency room at Richmond Memorial Hospital, and was later transferred to Staten Island Hospital. SIUH is the successor in interest to Richmond Memorial Hospital and Staten Island Hospital. In 1988, the O'Briens brought a medical malpractice action in New York Supreme Court, Richmond County, against SIUH, Dr. Robbins, Dr. Dano, and Dr. Hasan. In the state court complaint, the O'Briens alleged that Michael's meningitis was not timely diagnosed, and that as a result of the delay in diagnosis, he suffered severe brain damage and neurological impairment. USH paid $1,115,648.54 for his medical care through September of 1992. (USH 3(g) Stmt. ¶ 5.) USH has paid an additional $282,876.42 for his care since October 1, 1992. (USH Claims Reports, Ex. 1 to Letter from Charles D. Cole, Jr., Attorney for Plaintiff, to Judge Cedarbaum (Aug. 2, 1994).)

In a letter dated December 14, 1989, USH advised the O'Briens' lawyer that the Group Master Contract provides that USH "will be subrogated and succeed to Member's right of recovery against any person or organization with regard to any benefits provided to Member." (USH 3(g) Stmt. Ex. M.) The Group Master Contract and the Individual Conversion Contract include the following provision, which is the focal point of the parties' dispute:

---

1. This law firm is now Goldsmith & Richman, P.C. (O'Brien Mem. at 3 ¶ 5.)

2. Mr. Hasan's name is misspelled in the caption.

### Right of Recovery

With regard to any benefit paid to a Member, [USH] can recover the reasonable value of such benefits when they were paid to the Member in any third party settlements or satisfied judgments. [USH] will exercise its right only when the amount received by a Member is: (i) for hospital, medical or surgical services; and (ii) only to the extent that those services were provided by [USH].

(USH 3(g) Stmt. Ex. A, § IX, ¶ J; Ex. B, § VII, ¶ I.)

In July of 1991, the O'Briens settled their claim against Dr. Robbins, one of the state court defendants, for $725,000. According to the Settlement Orders approved by the court, the $725,000 was to be allocated in the following manner:

| | |
|---|---|
| $181,419.47 | Legal Fees |
| $ 5,402.64 | Legal Costs |
| $ 89,198.36 | For non-reimbursed expenses paid by the O'Briens and for the purchase of a van [3] |
| $ 1,649.00 | Medicaid Lien |
| $ 15,000.00 | Escrow Account for future legal expenses |
| $432,330.53 | Annuity for Michael O'Brien |

(USH 3(g) Stmt. Exs. Q, R.) Each of the attorneys involved in that settlement has submitted an affidavit. Lee S. Goldsmith, who represented the O'Briens, states that the $725,000 "did not include reimbursement of monies that had been paid by [USH] for Michael's medical or hospital needs." (O'Brien Mem. Ex. C, Goldsmith Aff. ¶ 4.) Frederick H. Fern, who represented Dr. Robbins, states that there was no discussion of the allocation of the $725,000 and that he "assumed payment was being made to compensate Michael O'Brien for his past and future pain and suffering." (Id. Fern Aff. ¶ 4.) He stated further that "[a]t no time was I asked nor did I offer any sum of money for the medical or hospital expenses incurred by the [USH] contract of insurance." (Id. ¶ 5.)

### Discussion

Summary judgment is authorized when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In examining the record, the court "must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." Gibson v. American Broadcasting Cos., Inc., 892 F.2d 1128, 1132 (2d Cir. 1989); see Celotex, 477 U.S. at 330 n. 2, 106 S.Ct. at 2556 n. 2. The judge's role in summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### I. USH's Right of Recovery

Defendants argue that the right of recovery clause in the USH plan precludes USH from recovering any portion of a settlement or judgment that is not specifically for hospital, medical or surgical services. Defendants contend that the settlement between the O'Briens and Dr. Robbins was compensation for Michael O'Brien's pain and suffering, and not for medical benefits, and that therefore USH is not entitled to any portion of the $725,000. USH, on the other hand, contends that pursuant to ERISA it is entitled to recover from the proceeds of any settlement the money that it paid for Michael O'Brien's medical care. USH argues that any allocation of the settlement proceeds as recovery for pain and suffering, as opposed to reimbursement for medical expenses, is irrelevant and cannot defeat its right to recover from the entire settlement.

The first sentence of the right of recovery clause provides that "[w]ith regard to any

---

**3.** In the Petition to the state court in connection with the settlement with Dr. Robbins, Mrs. O'Brien stated that "[w]hile some of [Michael's] care has been provided and reimbursed by my health insurance carrier, the remainder has resulted in expenditures of money by my husband and myself out of our own savings and earnings. We are, therefore, requesting from the proceeds of this settlement that the sum of $89,198.36 be paid directly to us for the purposes of reimbursing us for past expenses and for purchase of a van." (USH 3(g) Stmt. Ex. P ¶ 10.)

benefit paid to a Member, [USH] can recover the reasonable value of such benefits when they were paid to the Member in any third party settlements or satisfied judgments." (USH 3(g) Stmt. Ex. A, § IX, ¶ J; Ex. B, § VII, ¶ I.) Standing alone, that sentence might support USH's position that it is entitled to recover its benefits from the settlement with Dr. Robbins, as well as from any future settlement or judgment in the case. However, the second sentence clearly limits USH's ability to exercise its right. That sentence provides that "[USH] will exercise its right *only when* the amount received by a Member is: (i) for hospital, medical or surgical services; and (ii) only to the extent that those services were provided by [USH]." (*Id.*) (emphasis added).

USH argues that "when an employee welfare benefit plan includes a right of repayment or subrogation, the plan may recover from the settlement (or judgment) the amount paid in benefits[,]" regardless of how that settlement or judgment is allocated. (USH Mem. at 7.) USH contends that it is an "ERISA rule" that any allocation of a state court settlement or judgment cannot interfere with an ERISA plan's right of recovery, and that USH is therefore entitled to recover from the first dollar of any settlement or judgment in the O'Briens' malpractice action. (Tr. Aug. 5, 1994 at 9, 16.)

USH cites *McIntosh v. Pacific Holding Co.*, 992 F.2d 882 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 441, 126 L.Ed.2d 375 (1993), for the proposition that a beneficiary is required to reimburse an ERISA plan for medical benefits "even though settlement proceeds were intended to compensate [the] beneficiary for personal injuries rather than medical expenses." (USH Mem. at 8.) A careful reading of *McIntosh,* however, makes clear that the Eighth Circuit did not establish a broad right of recovery for all ERISA plans. Rather, as the court explicitly stated, the terms of the particular plan involved "control[ ] the resolution of th[e] case." *Id.* at 884. The plan in *McIntosh* provided that:

> It is hereby agreed that in the event a Covered Person receives any benefits arising out of injury or illness for which the Covered Person has, may have, or asserts

any claim or rights to recovery against a third party or parties, then any ... payments by the Plan for such benefits shall be made on the condition and with the agreement and understanding that the Plan will be reimbursed therefor by the Covered Person to the extent of ... the amount or amounts received by the Covered Person from such third party or parties by way of settlement....

992 F.2d at 883. The only limitation these terms place on the plan's right of recovery is that the plan may recover no more than the amount the covered person received in any third-party settlement. Thus, the court held that the plan was entitled to recover its expenses from the beneficiary's entire settlement.

USH also relies on *Singleton v. Board of Trustees of IBEW Local 613,* 830 F.Supp. 630 (N.D.Ga.1993). The *Singleton* court, however, like the *McIntosh* court, did not create any rights for ERISA plans in general, but instead interpreted the terms of the particular plan involved. That plan provided that benefit payments are "made on the condition ... that the Plan will be reimbursed therefor by the individual to the extent of, but not exceeding, the amount received by the individual from such third party by way of settlement or in satisfaction of any judgment." 830 F.Supp. at 632. The court stated that "when the plan summary and subrogation agreement provide in broad terms, such as *any* recovery *relating to* the injury, that settlement proceeds are to be repaid to the plan, such provisions are to be read to include all compensation received, including 'non-economic damages' such as pain and suffering." *Id.* at 631–32 (emphasis in original).

At oral argument, USH cited *Cutting v. Jerome Foods, Inc.,* 820 F.Supp. 1146 (W.D.Wis.1991), *aff'd,* 993 F.2d 1293 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993), as its best case. (Tr. Aug. 5, 1994 at 7.) In its brief, USH relies on *Cutting* for the propositions that an ERISA plan " 'may enforce its subrogation rights against plaintiffs and require them to execute a reimbursement agreement before receiving any payment from the Plan,' " and

that " 'the import of [clause in plan] is that after paying benefits, the Plan has first claim to any money recovered from third parties.' " (USH Mem. at 8) (quoting *Cutting,* 820 F.Supp. at 1155) What USH seems to ignore is the particular clause in the plan that the court was interpreting. That clause provided that "[b]y accepting any Plan payments of benefits arising out of illness, injury or medical condition, an individual ... agrees that the Plan shall be subrogated to all claims, demands, actions and rights or recovery of the individual against any third party or any insurer ... to the extent of any and all payments made or to be made hereunder 'by the Plan.' " *Cutting,* 820 F.Supp. at 1149–50. The conclusions reached by the *Cutting* court were based entirely on its interpretation of the broad language in the plan's subrogation clause, and not on any "ERISA rule" governing the plan.

No general principle regarding an ERISA plan's right of recovery can be drawn from any of these cases. In determining whether a plan had a right to reimbursement for medical expenses, the courts in *McIntosh, Singleton,* and *Cutting* examined the terms of the particular plan involved. This point is highlighted by another case cited by USH, *Dugan v. Nickla,* 763 F.Supp. 981 (N.D.Ill. 1991). The defendant in *Dugan* had been awarded $140,750 in a state malpractice suit in which the jury specifically allocated $7,000 as recovery for medical expenses. The ERISA plan, under which the defendant had received coverage for his medical expenses, contained a subrogation provision which stated that *"[u]pon any recovery* made by an Employee ... from any person ... whether by suit, judgment, settlement, compromise, or otherwise, the Trustees ... shall be entitled to immediate reimbursement to the extent of benefits paid." 763 F.Supp. at 984 (emphasis added). The court held that the ERISA plan's recovery was not limited by the jury's allocation because there was "no reference in the subrogation provision that states that the monies recovered be for medical payments." *Id.* Not only is there such a reference in the USH plan, but the reference is a provision which expressly states that USH will exercise its right of recovery "only when the amount received by a Member is

... for hospital, medical or surgical services ... provided by [USH]."

USH quotes a passage from *Asbestos Workers Local No. 23 Health and Welfare Plan by. and through Jordan v. Mackowiak,* No. 3:CV–91–416, 1991 WL 502504 (M.D.Pa. 1991), *aff'd,* 983 F.2d 1049 (3d Cir.1992), which seems to suggest that the *Dugan* decision stands for the broad proposition that " 'pursuant to the principles of ERISA, a plan participant's obligation to return advanced medical benefits is limited only by the total amount of the recovery in third-party litigation, not by any specific allocations of that recovery.' " (USH Mem. at 12) (quoting *Asbestos Workers,* 1991 WL 502504, * 3). It is clear, however, from the court's analysis in *Dugan,* that no general ERISA principles were being established. Instead, the *Dugan* court determined the rights of the parties by interpreting the specific terms of the plan, which granted the plan a right of reimbursement "upon any recovery" by a beneficiary in a third-party suit. Because none of the plans that were interpreted by the courts in *McIntosh, Singleton, Cutting,* and *Dugan* contains language similar to the second sentence of USH's right of recovery clause, the conclusions in those cases do not apply to the Plan in this case.

USH argues that the terms of its right of recovery clause do, in fact, support its position that it is entitled to reimbursement for the medical benefits that it provided. It contends that the second sentence of the right of recovery clause does not limit its recovery to the amount actually received by a member for hospital, medical or surgical services, and that "such a literal reading of [the] right of recovery makes no sense...." (USH Reply Mem. at 20.) USH argues that the second sentence limits its right of recovery only insofar as it places a cap on its recovery at the amount of benefits it paid on behalf of a member. (Tr. Aug. 5, 1994 at 9–10.)

Such a reading of the right of recovery clause makes the second sentence entirely superfluous. USH's right of recovery is already limited by the first sentence to the "reasonable value" of the benefits paid to a

member. The more logical interpretation of the second sentence is that USH's right to recover its benefits is limited to those cases in which the member actually receives payment for hospital, medical or surgical services provided by USH. Furthermore, the second sentence states that "only when" the member receives payments for these services is USH entitled to recover. This provision cannot be read to require a member to pursue a claim to recover medical benefits, nor can it be read to grant USH a right of subrogation, pursuant to which USH could pursue a claim for benefits against a third party in the O'Briens name. Although certain ERISA plans provide broader rights of recovery and subrogation, the USH plan explicitly limited those rights. And, as USH acknowledged at oral argument, nothing in ERISA prevents a plan from giving up or modifying by contract any rights it could have asserted under ERISA. (Tr. Aug. 5, 1994 at 15–16.)

Finally, USH urges that it cannot be limited by the language of the right of recovery clause because the only reason that the clause is so limited is that the New York State Superintendent of Insurance ("Superintendent") refused to approve a broad right of recovery.[4] USH contends that it did not need the Superintendent's approval of the contract since the contract was issued pursuant to an ERISA plan. However, because USH also offers the same contract outside the context of ERISA, it sent the contract to the Superintendent "to keep things simple." (Tr. Aug. 5, 1994 at 11.) From this, USH argues that "[b]ecause a broad subrogation clause was rejected by the [Superintendent] and because his action was preempted by ERISA, [USH] cannot be limited in its right to recover the reasonable value of benefits provided." (USH Supp. Mem. at 7.) USH cites no authority for this proposition.

■ What USH appears to be suggesting is that even assuming the language of the right of recovery clause limits its right to recover, that clause should be ignored be-

cause the Superintendent had no authority to dictate the terms of a plan issued pursuant to ERISA. However, the terms of a plan issued pursuant to ERISA cannot be "preempted" by ERISA on the ground that their inclusion in the plan was not required by ERISA. The motivation for the inclusion of particular language in a contract cannot affect whether or not that language is enforceable. The ERISA requirement that plan beneficiaries receive notice of their rights and obligations under the plan—to say nothing of basic contract principles—would be undermined by any other result. *See* 29 U.S.C. § 1022(a)(1) (plan summary "shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the Plan"); *Alco Standard Corp. v. Gilbert*, No. 91–4849, 1992 WL 91939 (N.D.Ill.1992) (failure to include right of recovery clause or subrogation clause in plan summary, and thereby give notice to plan beneficiary, prevented plan from enforcing those rights). By including the limited right of recovery clause in the plan, USH, for whatever reason, agreed to limit its right of recovery. If USH is correct in stating that it did not need the Superintendent's approval for its contract issued pursuant to ERISA, it could have drafted a different contract with a broader right of recovery, and it need not have sent that contract to the Superintendent for approval.[5]

## II. *Unjust Enrichment*

■ USH argues, alternatively, that regardless of the language in the contract, it is entitled to recover its benefits from the O'Briens under a federal common law theory of unjust enrichment. *See Provident Life & Accident Insurance Co. v. Waller*, 906 F.2d 985 (4th Cir.), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990); *Hercules, Inc. v. Pages*, 814 F.Supp. 79 (M.D.Fla.1993); *Travitz v. Northeast Department ILGWU Health and Welfare Fund*, 818 F.Supp. 761

---

4. "[USH] adopted the language in the right of recovery clause because the New York State Insurance Department would approve only a limited right of recovery using this language." (Williams Aff. ¶ 4.)

5. Indeed, at oral argument, USH represented that it no longer uses the same right of recovery clause in its contracts. (Tr. Aug. 5, 1994 at 17.)

(M.D.Pa.1993), *aff'd,* 13 F.3d 704 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994). To establish such a claim of unjust enrichment, USH must show that the O'Briens were unjustly enriched at the expense of USH. *See* Restatement of Restitution § 1 (1937); *United States v. 110–118 Riverside Tenants Corporation,* 886 F.2d 514, 521 (2d Cir.1989), *cert. denied,* 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 743 (1990).

USH contends that if it were precluded from recovering its more than $1 million in medical expenses, the O'Briens, who have so far received $725,000 in settlement, would be unjustly enriched. This argument, however, necessarily assumes that the settlement with Dr. Robbins did, in fact, include payment for medical expenses because, according to the terms of the contract, USH should reasonably expect to be reimbursed, and the O'Briens should reasonably expect to reimburse USH, "only when" the O'Briens receive money for "hospital, medical or surgical services." If the settlement did not include recovery for medical expenses, there would be no double recovery by the O'Briens for their health care expenses, and thus no unjust enrichment. Therefore, the theory of unjust enrichment adds nothing to USH's argument. In order to recover under the terms of the plan or under a theory of unjust enrichment, USH must establish that the O'Briens in fact received payment for medical, hospital or surgical services provided by USH, which they did not.

### III. *Reimbursement of USH from the Completed Settlement*

■ USH seeks to recover $536,528.89 from the O'Briens' settlement with Dr. Robbins, as well as a declaratory judgment that it is entitled to enforce its right of recovery against any future settlements or judgments in the state malpractice action. The defendants argue that, in accordance with N.Y.Civ. Prac.L. & R. § 4545(a), the O'Briens did not receive in the settlement with Dr. Robbins any payment for medical, hospital or surgical services provided by USH, nor can they receive any such payment from the remaining state malpractice defendants, and that there-

fore USH's claims must fail. Section 4545(a) provides, in part:

**Action for medical ... malpractice.** In any action for medical ... malpractice where the plaintiff seeks to recover the cost of medical care ..., evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source such as insurance ... or employee benefit programs (except such collateral sources entitled by law to liens against any recovery of the plaintiff). If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding, minus an amount equal to the premiums paid by the plaintiff for such benefits for the two-year period immediately preceding the accrual of such action and minus an amount equal to the projected future cost to the plaintiff of maintaining such benefits. In order to find that any future cost or expense will, with reasonable certainty, be replaced or indemnified by the collateral source, the court must find that the plaintiff is legally entitled to the continued receipt of such collateral source, pursuant to a contract or otherwise enforceable agreement, subject only to the continued payment of a premium and such other financial obligations as may be required by such agreement.

N.Y.Civ.Prac.L. & R. § 4545(a) (McKinney 1992).

A recent Second Department opinion regarding an insurance company's claim to the proceeds of a medical malpractice settlement holds that § 4545(a) is an evidentiary rule and is therefore inapplicable to a case that is settled rather than tried. *Teichman v. Community Hospital of Western Suffolk,* 205 A.D.2d 16, 617 N.Y.S.2d 338, 340 (2d Dep't 1994). However, the court recognized the practical impact of § 4545(a) by noting that parties to settlements are unlikely to ignore the fact that collateral source payments are not recoverable at trial. *Id.,* 617 N.Y.S.2d at 341.

Like the plaintiffs in *Teichman,* defendants contend that the settlement reached between the O'Briens and Dr. Robbins represents compensation for pain and suffering, and did not include any payment for medical expenses that had been covered by USH. The affidavits submitted by the lawyers who negotiated the settlement support those contentions. Defendants also point to the plain language of § 4545(a) to buttress their position that Dr. Robbins did not pay by way of settlement for expenses that the O'Briens could not have recovered from him at trial.

USH argues, however, that because a portion of the settlement was allocated to the payment of a Medicaid lien, the settlement must have included a recovery for medical expenses. But the $1,649.00 that was allocated to satisfy the Medicaid lien represented a *medical expense covered by Medicaid,* not USH, and therefore does not come within USH's right of recovery. Moreover, had the O'Briens pursued their claim against Dr. Robbins at trial, they would have been entitled pursuant to § 4545(a) to recover any amount that was subject to a lien, and thus it is reasonable that the O'Briens sought to recover the $1,649.00 in the settlement with Dr. Robbins. In any event, USH has proffered no evidence to show that the O'Briens "received ... [any compensation] for hospital, medical or surgical services ... provided by USH" in their settlement with Dr. Robbins. Without such a showing, USH cannot establish that the ERISA plan entitles it to any recovery from that settlement.

IV. *Declaratory Judgment as to Future Settlements or Judgment After Trial*

 USH also seeks a declaratory judgment that it is entitled to reimbursement from future settlements between the O'Briens and SIUH or Dr. Dano, and from any future judgment after trial of the state action. The defendants oppose plaintiff's motion for summary judgment and move for summary judgment in their favor on those claims. Because the determination of those claims will depend on the future course of the state malpractice action and on the nature of future settlements or judgments, if any, a claim for such declaratory relief is premature and not ripe for decision in this action. *See*

*Olin Corporation v. Consolidated Aluminum Corporation,* 5 F.3d 10, 17 (2d Cir.1993) ("the question we must ask is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.'") (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)) (alteration in original); *see also Empire State Pharmaceutical Society, Inc. v. Perales,* 672 F.Supp. 146, 148 (S.D.N.Y.1987). Therefore, these unripe claims must be dismissed for lack of jurisdiction.

*Conclusion*

For the foregoing reasons, USH's motion for summary judgment is denied, and the motions of Kathleen and Kevin O'Brien, Goldsmith, Tabak & Richman, P.C., SIUH, and Dr. Dano for summary judgment are granted with respect to the completed settlement with Dr. Robbins. As to the dismissed claims for a declaratory judgment with respect to any future settlement or recovery by the O'Briens, the motions of both plaintiff and defendants for summary judgment must be denied.

SO ORDERED.