OPINION OF THE COURT
Edward D. Burke, J.
In 1999, plaintiff, Bernadette DelRossi, and her husband, John E. DelRossi, now deceased, commenced this medical malpractice action to recover damages, both direct and derivative, attributable to the personal injuries which John E. DelRossi purportedly sustained as a result of the negligence and/or acts of medical malpractice on the part of the defendants. By their complaint and bill of particulars, the plaintiff charged the defendants with negligence and malpractice in failing to diagnose and treat a renal mass in Mr. DelRossi’s right kidney in 1996 while he was being treated by the defendants for a 10-centimeter mass in the left kidney. The gravamen of the plaintiff’s claims included allegations that the failure of the defendants to diagnose and treat the right renal mass delayed proper surgical treatment thereof by some 15 months, during which time, the cancer of the right kidney metastasized to the liver and caused Mr. DelRossi’s death.
The complaint and bill of particulars originally served herein in 1999 were amended in 2002 after plaintiff, Bernadette DelRossi, had been appointed the personal representative of the estate of John E. DelRossi. By such amendments, the plaintiff, in her capacity as administratrix of the estate of John E. DelRossi, was substituted as plaintiff herein in the place and stead of the decedent. In such capacity, the plaintiff asserted claims on behalf of the decedent’s estate to recover damages for the personal injuries of John E. DelRossi prior to his death. Plaintiff, Bernadette DelRossi, as personal representative of the estate of John E. DelRossi, also asserted a new claim, on behalf of the distributees of John E. DelRossi, to recover damages attributable to his wrongful death. Plaintiff continued her indi *456 vidual derivative claims to recover derivative damages as the wife of the decedent incurred by her by reason of the personal injuries suffered by John E. DelRossi prior to his death.
In May of 2004, the within action was assigned to this court for trial and was settled by the parties prior to verdict. Pursuant to the terms of the settlement, the plaintiff agreed to accept the sum of $825,000 from the defendants, collectively, in full settlement of the wrongful death claim. The plaintiff also agreed to discontinue the remaining claims for damages, asserted herein by the plaintiff in her representative and individual capacities, for the personal injuries sustained by the decedent prior to his death.
By the instant application (No. 004), plaintiff requests, inter alia, that the court exercise the discretion vested in it under EPTL 5-4.6 (a) (1) and retain jurisdiction to determine all issues regarding distribution of the proceeds recoverable by the plaintiff on behalf of the decedent’s six distributees in accordance with the plaintiffs proposal for such distribution. This application is granted as the court finds that sufficient good cause exists for this court to hear and determine the instant application. Having presided over the trial of this action and the settlement struck by the parties as placed upon the record in open court and after inquiring extensively of the plaintiff, her counsel and other members of her family present at the trial, this court finds that the best interests of the parties and principles of judicial economy will be served if this court retains jurisdiction to determine the remaining portions of the plaintiffs application for relief pursuant to EPTL 5-4.1 et seq.
By the remaining portions of the instant application, the plaintiff seeks an order, pursuant to EPTL 5-4.6, approving the proposed compromise of the wrongful death claim asserted herein by the plaintiff in her capacity as administratrix of the estate of John E. DelRossi and for an order directing distribution of the settlement proceeds as proposed by the plaintiff. In this regard, the plaintiff requests that the court fix and determine payment of the plaintiffs reasonable counsel fees and allow payment of such fees and allowable costs and disbursements in the total amount of $223,660 from the settlement proceeds. The plaintiff further requests that the court declare the invalidity of the right of reimbursement and/or lien asserted by Aetna/U.S. Healthcare in the amount of $28,327.46 against the proceeds recoverable by the plaintiff in this action. Plaintiff then proposes that from the net proceeds available af *457 ter payment of attorney’s fees, costs and disbursements, namely the sum of $601,340, the court direct, pursuant to EPTL 5-4.4, distribution of the sum of $301,340 to the plaintiff, as wife and distributee of the deceased plaintiff, and that the remaining $300,000 be equally distributed to the five infant distributees of the decedent by the purchase of an annuity or annuity contracts providing for lump-sum payments to each child on and after the age of 21 years. Finally, the plaintiff asks that the court dispense with the posting of any bond and that it lift the restrictions contained in the plaintiffs limited letters of administration to the extent necessary to allow plaintiff to effect the settlement and distribution of the proceeds as proposed and to settle her account as administratrix for the proceeds recoverable by her in this action pursuant to SCPA 2204.
In support of her demands for an adjudication of the invalidity of the lien and/or reimbursement rights of Aetna/U.S. Healthcare (hereinafter referred to as Aetna), which provided medical benefits to John E. DelRossi prior to his death, the plaintiff joined Aetna by service of the initiatory order to show cause, by which this motion was interposed, upon Aetna’s servicing agent, Rawlings & Associates, PL.L.C. In response to such service, Rawlings & Associates, PL.L.C., on behalf of Aetna (hereinafter referred to as Aetna/Rawlings), appeared herein by service of answering papers. Therein, Aetna/Rawlings opposed the plaintiff s demands for an order extinguishing any liens or rights of reimbursements asserted by Aetna/Rawlings against the proceeds recoverable by the plaintiff in this action and demanded an order directing the plaintiff to fully reimburse Aetna/ Rawlings the $28,327.46 it paid in medical expense benefits on behalf of the decedent prior to his death.[2]
In support of their contentions regarding the validity of their asserted right of reimbursement for all medical benefits paid to John E. DelRossi, Aetna/Rawlings asserts that it was the administrator of an employee benefits plan which provided medical benefits to John E. DelRossi, a member of the fund, from July 1, 2000 to December 7, 2001, to defer the costs of his treatment for cancer of the kidneys and liver. Aetna/Rawlings claims that under the terms of the employee benefits plan at issue here, the plan was given a broad right to be reimbursed out *458 of any compensation which a plan member receives in relation to an illness for which the plan paid medical expense benefits to said member. Aetna/Rawlings cites and relies upon federal case authorities wherein the subrogation and/or right of reimbursement claims of medical benefit providers under certain employee benefits plans were found to be actionable in federal courts and determinable in accordance with federal law; namely, the Employee Retirement Income Security Act of 1974 ([ERISA] 29 USC § 1001; U.S. Healthcare, Inc. [N.Y.] v O’Brien, 868 F Supp 607 [US Dist Ct, SD NY 1994]). Review of the employee benefit plan at issue here reveals that the same does indeed contain references to ERISA. It thus appears that the subject welfare benefits plan is subject to the provisions of ERISA (29 USC § 1001 et seq.), although no conclusive proof of this contention has been submitted to the court.
Prior to 2002, various federal courts, including the United States District Court for the Southern District Court of New York in U.S. Healthcare, Inc. (N.Y.) v O’Brien (868 F Supp 607 [1994]), sustained the right of ERISA health care providers to sue in federal court, by removal or otherwise, to obtain reimbursement of the medical expense benefits advanced to plan members who recovered compensation from third parties (Administrative Comm, v Gauf, 188 F3d 767 [1999]; Blue Cross & Blue Shield of Ala. v Sanders, 138 F3d 1347 [1998]; Southern Council of Indus. Workers v Ford, 83 F3d 966 [1996]; cf., FMC Med. Plan v Owens, 122 F3d 1258 [1997]), but only to the extent provided under the terms of the subrogation, lien and/or right of reimbursement clauses of the benefits plan at issue (McIntosh v Pacific Holding Co., 992 F2d 882 [1993]; Singleton v Board of Trustees, of IBEW Local 613, 830 F Supp 630 [1993]; U.S. Healthcare, Inc. [N.Y.] v O’Brien, 868 F Supp 607, supra; Chitkin v Lincoln Natl. Ins. Co., 879 F Supp 841 [1995]; Yreeland v Cardi, 134 F Supp 2d 270 [2000]).
The precedential effect of the foregoing cases and others similarly decided was, however, seriously eroded by the 2002 decision of the United States Supreme Court in Great-West Life & Annuity Ins. Co. v Knudson (534 US 204 [2002]). Therein, the Court held that ERISA plan administrators could not sue in federal court under ERISA to enforce its contractual rights to be reimbursed out of a plan member’s tort recovery against third parties. In so holding, the Court found that because the claims asserted by the plaintiff plan administrator sought legal rather than equitable relief, they were not actionable in federal *459 court under ERISA as the statute confers only equitable remedies upon plan administrators. Although plan members are not similarly restricted under ERISA and may sue in state court for determination of claims regarding the validity, scope and extent of a plan’s right of reimbursement or subrogation under an ERISA plan (see, ERISA § 502 [a] [1] [B]; [e] [1] [29 USC § 1132 (a) (1) (B); (e) (1)]), the Knudson court left open the question of whether plan administrators could successfully assert such claims in state courts or whether such claims would be preempted by ERISA’s broad preemption provisions (see, ERISA § 514 [a], [c] [29 USC § 1144 (a), (c)]).
That plan members and other individuals may sue ERISA plan administrators in state court to enforce their rights under the terms of a benefits plan and, within the context of such suit, the state court may determine the status of any liens and/or rights of reimbursement asserted by the plan against a plan member or other plaintiff’s tort or other recovery from third parties is clear (ERISA § 502 [a] [1] [B]; [e] [1] [29 USC § 1132 (a) (1) (B); (e) (1)]). In light of the plaintiffs joinder of the plan administrator, Aetna/Rawlings, and its appearance herein by the interposition of answering papers opposing the plaintiffs demands for relief and demanding affirmative relief in its favor, the court finds that this state court action is an appropriate forum to determine the claims interposed by and between the plaintiff and Aetna/Rawlings under ERISA or otherwise. To the extent that these claims arise under ERISA, the court will apply the provisions thereof and the federal interpretive principles enunciated by the federal courts, including applicable state laws and case authorities not preempted under ERISA (see, Gerosa v Savasta & Co., Inc., 329 F3d 317 [2003]; see also, Nealy v US Healthcare HMO, 93 NY2d 209 [1999]). Claims asserted herein by the plaintiff not arising under ERISA will be decided solely in accordance with the laws of this state.
The court’s analysis of the right of reimbursement asserted by Aetna/Rawlings against the plaintiff herein, under both federal and state law, begins with the terms of the subrogation and/or reimbursement provisions of the contract or benefits plan, pursuant to which, the plan administrator paid health care benefits to the employee or other plan member. Review of the subject plan reveals that it provides a broad right of reimbursement in favor of the plan administrator to recover from any plan member, his or her minor dependents, legal rep *460 resentative or estate, who receives compensation from any person or entity that caused or is liable or legally responsible in relation to the illness which triggered the medical benefits paid by the plan for which reimbursement is sought. In addition, the plan provides for reimbursement from compensation received by a plan member, his or her minor dependents, legal representative or estate in relation to an illness for which the plan paid medical benefits. Notwithstanding the apparent breadth of the subject plan’s subrogation and/or reimbursement provisions, and for the reasons set forth below, this court finds that Aetna/ Rawlings has no right of reimbursement from the plaintiff by reason of the settlement of the wrongful death claims asserted in this action.
Wrongful death claims are entirely creatures of statute {see, EPTL 5-4.1 et seq.) and are wholly separate and distinct from the estate survival action available to the estate of a deceased injured claimant under EPTL 11-3.2 and 11-3.3. The proceeds recoverable upon any such claim inure exclusively to the benefit of the decedent’s distributees who sustained pecuniary losses as a result of the wrongful death of their ancestor (EPTL 5-4.1, 5-4.4; George v Mt. Sinai Hosp., 47 NY2d 170 [1979]). While wrongful death claims are actionable only when prosecuted by the duly appointed personal representative of the estate of the decedent, any recovery realized thereon is constructively held in trust by said personal representative for the benefit of the decedent’s distributees until a distribution of such proceeds, in relation to the pecuniary losses sustained by each of the decedent’s distributees, is determined by the trier of fact, or in cases of settlement prior to trial, by the court with jurisdiction over said claims (EPTL 5-4.3, 5-4.4).
No part of any recovery realized on a wrongful death claim passes into the estate of the decedent (George v Mt. Sinai Hosp., 47 NY2d 170 [1979], supra). The personal representative of the estate who prosecutes said claim on behalf of the decedent’s distributees remains accountable and potentially liable to each such distributee for the personal representative’s actions in prosecuting, settling or otherwise concluding their asserted wrongful death claims against third parties and for the proper distribution of any proceeds collected thereon (see, EPTL 5-4.1 et seq.; SCPA 2204). Creditors of the decedent’s estate and other claimants, except those asserting claims which arise from the prosecution of the wrongful death claim itself or those of lien-holders asserting personal claims against a distributee and his/ *461 her share of the recovery, are without standing to assert claims against wrongful death recoveries or to otherwise participate in accountings and other similar proceedings brought in connection with the distribution of wrongful death proceeds (EPTL 5-4.4; SCPA 2204; Matter of Maier, 178 Misc 2d 1061 [1998]; Peter v Shao Chi Yu, 173 Mise 2d 911 [1997] [and cases cited therein]).
Since the reimbursement rights of medical benefits providers to recover medical expense benefits paid to plan members arise out of the contract or plan between the provider and its plan members, persons who are neither parties to such contract nor members of the subject benefits plan will not be bound by the terms of the reimbursement provisions of any such plan. Under the plan at issue here, plan members are defined to include minor covered dependents of a plan member, the legal representative of the plan member, representatives of incapacitated persons, and the “estate” of a plan member. The unique status of a personal representative of a decedent’s estate who prosecutes a wrongful death action and recovers thereon, not on behalf of the decedent’s estate but as constructive trustee of the decedent’s distributees, has been held to compel a finding that such personal representative is not a member of an employee benefits plan governed by ERISA, and that the state wrongful death statute, upon which the status of such personal representative and the nature of his or her claims for recovery are dependent, is not preempted by ERISA (Liberty Corp. v NCNB Natl. Bank of S.C., 984 F2d 1383 [1993]; see also Nealy v US Healthcare HMO, 93 NY2d 209 [1999], supra; cf., Mclnnis v Provident Life & Acc. Ins. Co., 21 F3d 586 [1994]; Thomas v Administrative Comm, of Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan, 210 F Supp 2d 1296 [2002]).
This court finds that the plaintiff, to the extent that she stands before this court in her representative capacity as the prosecutor of the wrongful death claim of her New York decedent under EPTL 5-4.1 et seq., is neither the “legal representative” nor the “estate” of Mr. DelRossi within the meaning of those terms as employed in the Aetna/Rawlings’ benefits plan, and is thus not a member of such plan. The court further finds that because the plaintiff, in her capacity as prosecutor of the wrongful death claim, is not a member of the subject plan, she is not bound by the reimbursement provisions thereof and Aetna/Rawlings’ contractual rights of reimbursement will not attach to any recovery from third persons realized by the *462 plaintiff on the settlement of her wrongful death claim. The court further finds that the wrongful death statute which accords the plaintiff her unique status as constructive trustee for the decedent’s statutory distributees in connection with plaintiff’s prosecution of the wrongful death claim is not preempted by ERISA as said statute is procedural in nature and does not “relate to” the subject benefit plan within the meaning of ERISA’s preemption provisions (29 USC § 1144 [a]; California Div. of Labor Stds. Enforcement v Dillingham Constr., N.A., Inc., 519 US 316 [1997]; New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co., 514 US 645 [1995]; Liberty Corp. v NCNB Natl. Bank of S.C., 984 F2d 1383 [1993], supra-, see also, Nealy v US Healthcare HMO, 93 NY2d 209 [1999], supra).
Had the plaintiff recovered on the estate’s survival action claim for recovery of all damages attributable to the personal injuries sustained by the decedent prior to his death, Aetna/ Rawlings’ right of reimbursement under the plan and under federal law governing same might attach to such recovery (see, Liberty Corp. v NCNB Natl. Bank of S.C., 984 F2d 1383 [1993], supra; McInnis v Provident Life & Acc. Ins. Co., 21 F3d 586 [1994], supra; Thomas v Administrative Comm, of Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan, 210 F Supp 2d 1296, supra), but only to the extent that such recovery included compensation for the medical expenses of the decedent’s illness which were paid by Aetna (Vreeland v Cardi, 134 F Supp 2d 270 [2000], supra; U.S. Healthcare, Inc. [N.Y.] v O’Brien, 868 F Supp 607 [1994], supra-, see also, Primax Recoveries Inc. v Carey, 247 F Supp 2d 337 [2002]; Wal-Mart Stores, Inc. Associates’ Health & Welfare Plan v Wells, 213 F3d 398 [2000]; cf., McIntosh v Pacific Holding Co., 992 F2d 882 [1993]; Singleton v Board of Trustees, of IBEWLocal 613, 830 F Supp 630 [1993]; Nossoughi v Federated Dept. Stores, 175 Misc 2d 585 [1998]).
That the wrongful death claim asserted by the plaintiff in this action did not include claims for recovery of the medical expenses for which Aetna/Rawlings seeks reimbursement is clear beyond peradventure. Under New York law, a wrongful death claim may encompass demands for recovery of damages incurred by distributees on account of medical aid or nursing incident to the injury causing death but only if a distributee has paid such expenses or is responsible therefor (EPTL 5-4.3). In all other cases, demands for recovery of medical expenses incident to the injury causing death are actionable by the estate of a decedent *463 in the separate survival action wherein damages attributable to the personal injuries suffered by the decedent prior to his or her death are at issue (EPTL 11-3.2, 11-3.3; Matter of Jackson, 71 Misc 2d 133 [1972]).
In the instant action, plaintiff, Bernadette DelRossi, asserted a wrongful death claim on behalf of the decedent’s six distributees, including herself, and a separate estate survival cause of action, in which she demanded, on behalf of the decedent’s estate, damages attributable to the personal injuries suffered by John E. DelRossi prior to his death. It is apparent that no viable claim for recovery of the medical expenses incident to the decedent’s injury causing death for which Aetna/Rawlings paid medical expense benefits was included in the plaintiffs wrongful death claim since no distributee paid said medical expenses or was responsible for payment of same (see, Matter of Jackson, 71 Mise 2d 133 [1972], supra). The only claim which properly could have encompassed demands for recovery of medical expenses for which reimbursement is sought herein by Aetna/ Rawlings was the one interposed on behalf of the decedent’s estate by the plaintiff in the survival action.
To the extent that Aetna/Rawlings’ opposing papers challenge the propriety of the determinations of the plaintiff to discontinue her estate survival action rather than the claim for wrongful death because such determinations impermissibly serve to defeat Aetna/Rawlings ’ claims for reimbursement under the plan, such a challenge is rejected as unmeritorious.
An estate fiduciary who prosecutes a wrongful death claim on behalf of the decedent’s distributees and/or a survival action on behalf of the decedent’s estate is free to compromise said claims absent restrictions imposed on the right to compromise by the appointing court (EPTL 11-1.1). In the case at bar, plaintiff, Bernadette DelRossi, was issued limited letters of administration by the Surrogate of Suffolk County. A reading of those letters and the decree upon which they were issued reveals, however, that the plaintiff had full authority to prosecute, settle or otherwise compromise both the wrongful death cause of action, which she described in her petition for letters of administration, and the survival cause of action possessed by the estate. The only restriction imposed by the Surrogate was limited to plaintiffs cause of action for wrongful death and said restriction prohibited the plaintiff only from
“receiving any money resulting from the compromise, settlement or judgment on the [wrongful *464 death] cause of action and from making any distribution thereof to any person until further order of this court and the filing of a satisfactory security and institution of a proceeding for a judicial settlement of the account if so required by the court.”
Empowered as she was by the limited letters of administration granted to her, plaintiff, Bernadette DelRossi, was free to prosecute, settle or otherwise compromise the wrongful death claim asserted in this action by her on behalf of the decedent’s distributees and the estate’s survival action to recover damages attributable to the personal injuries suffered by Mr. DelRossi prior to his death. Being so empowered, the plaintiff was free to make the tactical decision to discontinue the estate’s claim for damages in the survival action, which included claims to recover the medical expenses of the decedent’s last illness, in exchange for the settlement of the wrongful death claims of the decedent’s distributees which contain no viable claims for recovery of medical expenses. While the plaintiff remains accountable to both the estate’s beneficiaries and the decedent’s distributees for such determinations, she is not answerable to Aetna/Rawlings therefor.
In making the foregoing finding, the court is not unmindful that the right of medical insurers or ERISA plan administrators to intervene in a personal injury action so as to insure that a plaintiff prosecuting said action does not improperly fashion settlements to exclude recovery for medical expenses which would be subject to a lien or right of reimbursement on the part of the medical insurer or plan administrators is well established (Teichman v Community Hosp. of W. Suffolk, 87 NY2d 514 [1996]; Kaczmarski v Suddaby, 9 AD3d 847 [2004]; see also, Primax Recoveries Inc. v Carey, 247 F Supp 2d 337 [2002], supra; cf., Berry v St. Peter’s Hosp. of City of NY., 250 AD2d 63 [1998]). The policy underlying the Court of Appeals holding in Teichman was aimed at preventing a double recovery by the plaintiff for medical expenses and to assure that the tortfeasor, rather than rate-paying insureds, would ultimately bear the expense of such medical benefits. The Court thus conferred a right upon the medical insurer to intervene in the personal injury action to protect itself against the postsettlement machinations of a plaintiff who might attempt to fashion the settlement so as to exclude therefrom any recovery for the medical expenses which the insurer had paid or was obligated to pay to the plaintiff in the future and for which the plaintiff originally demanded recovery.
*465 Unlike the injured plaintiff in Teichman, who by her CPLR 1201 representative prosecuted a single claim for damages attributable to the personal injuries suffered by said plaintiff, and when faced with a proposed settlement, fashioned the settlement so as to exclude recovery of any medical expenses by abandoning or discontinuing the injured plaintiff’s pleaded demands therefor, the plaintiff here has settled one cause of action; namely, the wrongful death action in which no viable claim for recovery of medical expenses was interposed, and agreed to discontinue the estate’s separate and distinct survival action claim, which claim included demands for recovery of all medical expenses attributable to the personal injuries sustained by the decedent prior to his death. Violation of the public policy underlying Teichman’s prohibition against double recoveries and the rule that, as between the two, third-party tortfeasors rather than insured ratepayers should bear the cost of medical expenses, is not implicated in this case.
It is for the reasons set forth above that this court grants plaintiff’s application for an order declaring that Aetna/ Rawlings has no right of reimbursement from the plaintiff in any capacity by reason of the recovery of damages by her in this action and declares that any right of reimbursement lien or other claim asserted by Aetna/Rawlings against the plaintiff or the settlement proceeds recoverable by her in this action is invalid, unenforceable and without effect.
Plaintiffs further demand for an order approving the amount of the proposed compromise of her wrongful death claim is granted. The court is satisfied that the amounts recoverable on the asserted wrongful death claim are fair and reasonable and that the best interests of the decedent’s distributees will be served by the distributees’ recovery of the amounts offered by the defendants in full settlement of such claim. Pursuant to EPTL 5-4.6, the court approves the proposed compromise of the wrongful death claim asserted herein against the defendants in the amount of $825,000.
The court further grants the plaintiffs application for an order awarding plaintiff the counsel fees and disbursements requested by her in the amount of $223,660 and directs that said sum be paid by the defendants out of the gross amount recoverable by the plaintiff from the defendants on her wrongful death claim (EPTL 5-4.4). The court further approves distribution of the net settlement proceeds to the decedent’s distributees as proposed herein by the plaintiff. In making this determi *466 nation, the court finds that the sums distributable to each of the six distributees of the decedent; namely, the $301,340 lump sum to the plaintiff and the remaining $300,000, by allocation of $60,000 to each infant distributee, structured as proposed so as to yield $524,527 in guaranteed payments distributable to each child in proportion to their years of dependency upon their father, fairly and adequately compensate each of said distributees for the pecuniary losses they sustained as a result of the wrongful death of their decedent.
The court further finds that with respect to the five infant children of the decedent, allocation of the sum of $60,000 to each of said distributees, coupled with the structured payout available thereon by reason of the defendants’ purchase of an annuity which generates the proposed, guaranteed, lump-sum payments for each child beginning at age 21, provides each of them with a measure of damages that is commensurate with their pecuniary losses and consistent with their rights to recover same under established principles of law (Matter of Duffy, 208 AD2d 1169 [1994]; Matter of Acquafredda, 189 AD2d 504 [1993]; Matter of Feld, 153 Misc 2d 615 [1992]). While the plaintiff will receive a distribution slightly greater (5%) than that which she would have received under the mathematical formula enunciated in Matter of Kaiser (198 Misc 582 [1950]), this court finds that the circumstances of this case and those of each of the distributees warrant the distribution as proposed herein by the plaintiff. Under the structured payout proposed, the proceeds recoverable by the infant distributees are preserved during their minorities and for several years thereafter, as they will receive their distributions only after reaching the age of 21 years. This leaves the plaintiff as the sole provider of support to the infant children until they reach the age of 21 years. While a parent is legally responsible for the support of his or her children until they reach age 21, such support is measured by such parent’s financial ability to provide same. It is thus not uncommon for courts to approve invasions of infant funds to provide for such things as summer camp, computers, after school recreational fees, school trips, vacation expenses and other similar items not constituting necessaries upon a minimal showing of a parent’s financial inability to pay for such items. The settlement proceeds realized by the infant children here are not subject to any such invasion as they are preserved under the structure until each child attains the age of 21. The court thus finds that the distributions proposed herein *467 are fair and equitable and that the best interests of the infant distributees will be served thereby.[3]
The defendants are thus directed to pay over to plaintiff’s counsel the total sum of $223,660, which sum represents disbursements in the amount of $26,450 and counsel fees in the amount of $197,210 calculated in accordance with section 474-a of the Judiciary Law. The net remaining portions of the $825,000 settlement funds shall be paid by the defendants as follows: $301,340 to the plaintiff, in her capacity as wife and distributee of the deceased plaintiff; the remaining $300,000, by allocation of $60,000 for each of the decedent’s infant distributees, to be used for the purchase of an annuity contract, compliant with the requirements of CPLR 1206, which shall provide the lump-sum guaranteed, structured payouts to each infant distributee as described in the proposals therefor attached to the moving papers. In exchange for such payment, the plaintiff shall execute and deliver to the defendants general releases, stipulations of discontinuance and other documents necessary to effect the settlement of the wrongful death claim in the amount of $825,000 and the discontinuance of said claim and all other claims asserted herein by the plaintiff, individually and as administratrix of the estate of John E. DelRossi.
Plaintiff’s further application for an order dispensing with the posting of any bond as administratrix of the estate of her deceased husband is granted. The terms of this decision and the order and judgment to be entered hereon contemplate that no monies are collectible by the plaintiff on behalf of the decedent’s estate and that the sums recoverable on the wrongful death action are payable directly to the plaintiff in her capacity as surviving spouse of the decedent and payable to the infant distributees by way of the purchase of a structured annuity which provides lump-sum payments to each infant distributee several years after he or she reaches the age majority. Since the plaintiff will not be collecting or receiving from the defendants any settle *468 ment proceeds in her capacity as administratrix of the estate of the decedent, the need for the posting of a bond as required by the limited letters of administration granted to the plaintiff is obviated. Nor is there any need for the appointment of guardians of the property, for the infant distributees as contemplated by SCPA 2220, since the infant distributees will not receive any settlement monies during their minority. In addition, the court finds that the direct payment by the defendants of the net settlement proceeds to the decedent’s distributees does not violate the restrictions contained in the limited letters of administration issued to the plaintiff by the Surrogate. There is thus no need to lift any of the restrictions imposed by such letters issued by the Surrogate.
Plaintiffs request for judicial settlement of her account of the proceeds recovered in this action and payable to the decedent’s statutory distributees in accordance with the terms hereof is granted pursuant to SCPA 2204 to the following extent: that upon compliance with the terms of this memorandum decision and the order and judgment to be entered hereon, the account of Bernadette DelRossi, as administratrix of the estate of John E. DelRossi, shall be judicially settled with respect to her prosecution of all claims interposed in this action by the plaintiff in her capacity as administratix of the estate of John E. DelRossi and with respect to the proceeds recovered in this action from the defendants and she shall be discharged as to all matters embraced in her account.

. None of the named defendants opposed any of the relief demanded by the plaintiff on the instant application. Defendants V and W did, however, interpose answering papers reiterating that their offer of settlement was in no way an admission of liability on their part to the plaintiff in any capacity.

. While the court is aware of the statutory framework which provides for the appointment of guardians ad litem for infant distributees in proceedings like the instant one conducted in forums such as the Surrogate’s Court (see SCPA 403), the court finds such appointments to be unnecessary here. The interests of the infant distributees are not so adverse to those of the plaintiff nor to each other so as to warrant the appointment of independent representatives. The court is capable of protecting the interests of each of said distributees as it alone is charged with the responsibility for assuring that a fair and equitable allocation of the wrongful death proceeds among the decedent’s distributees is achieved (Matter of Duffy, 208 AD2d 1169 [1994]).